NS:KDE/KCB/CSK
F.#2015R00270

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   DEC 0 4 2019   ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

RENATO BARCA, JR.,
    also known as "Ronny,"
ANDREW CAMPOS,
GEORGE CAMPOS,
JAMES CIACCIA,

BENITO DIZENZO,
    also known as "Benny,"
VINCENT FIORE,
MARK KOCAJ,
    also known as "Chippy,"
RICHARD MARTINO,
JOHN SIMONLACAJ,
    also known as "John Si" and
    "Smiley,"
FRANK TARUL,
    also known as "Bones," and
MICHAEL TARUL,
    also known as "Perkins,"

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. CR 19 - 575

(T. 18, U.S.C., §§ 371, 894(a)(1),
981(a)(1)(C), 982(a)(1), 982(a)(2),
982(b)(1), 1349, 1512(c)(1),
1512(c)(2), 1512(k), 1956(a)(1),
1956(a)(1)(A)(i), 1956(a)(1)(B)(i),
1956(h), 1957(a), 1957(b), 1962(d),
1963, 1963(a), 1963(m), 2 and 3551 et
seq.; T. 21, U.S.C., §§ 853(a) and
853(p); T. 26, U.S.C., § 7206(1); T. 28,
U.S.C., § 2461(c))

BLOCK, J.

MANN. M.J.

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Enterprise

1.    The Gambino organized crime family of La Cosa Nostra, including its members and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter, the "Gambino crime family" and the "enterprise"). This enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Gambino crime family engaged in, and its activities affected, interstate and foreign commerce. The Gambino crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2.    La Cosa Nostra operated through organized crime families. Five of these crime families – the Bonanno, Colombo, Gambino, Genovese and Luchese crime families – were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3.    The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4.     The Gambino crime family had a hierarchy and structure.   The head of the Gambino crime family was known as the "boss."   The Gambino crime family boss was assisted by an "underboss" and a counselor known as a "consigliere."   Together, the boss, underboss and consigliere were the crime family's "administration."   With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups.   The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family.   In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family.   Members of the Gambino crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny.   Further, on occasion, the Gambino crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5.     Below the administration of the Gambino crime family were numerous "crews," also known as "regimes" and "decinas."   Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina."   Each captain's crew consisted of "soldiers" and "associates."   The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection.   In return, the captain often received a share of the crew's earnings.

6.     Only members of the Gambino crime family could serve as a boss, underboss, consigliere, captain or soldier.   Members of the crime family were referred to on

occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button."   Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7.      Many requirements existed before an associate could become a member of the Gambino crime family.   The Commission of La Cosa Nostra from time to time limited the number of new members who could be added to a crime family.   An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved.   Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony.   During the ceremony, the associate, among other things, swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

A.      Methods and Means of the Enterprise

8.      The principal purpose of the Gambino crime family was to generate money for its members and associates.   This purpose was implemented by members and associates of the Gambino crime family through various criminal activities, including extortion, bribery, fraud, illegal gambling and loansharking.   The members and associates of

the Gambino crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.      Although the primary purpose of the Gambino crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes without the approval of higher-ranking members of the family.   For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.     The members and associates of the Gambino crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.   That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.     Members and associates of the Gambino crime family often coordinated criminal activity with members and associates of other organized crime families.

B.      The Defendants

12.     The defendant ANDREW CAMPOS was a captain within the Gambino crime family.

13.     The defendants GEORGE CAMPOS, JAMES CIACCIA, VINCENT FIORE and RICHARD MARTINO were soldiers within the Gambino crime family.

14.     The defendants RENATO BARCA, JR., also known as "Ronny," ▮▮▮▮▮▮▮▮▮▮▮▮, BENITO DIZENZO, also known as "Benny," MARK KOCAJ, also

known as "Chippy," FRANK TARUL, also known as "Bones," and MICHAEL TARUL,

also known as "Perkins," were associates within the Gambino crime family.

15.     The defendant JOHN SIMONALACAJ, also known as "John Si" and

"Smiley," was a Managing Director of Development at a construction development company

("Construction Company #1"), the identity of which is known to the Grand Jury.

II.     The Criminal Schemes

16.     The defendants and their co-conspirators committed a variety of crimes

– including schemes to defraud, bribe and extort – that served to enrich themselves and other

members and associates of the Gambino crime family.   Through those crimes, the

defendants corrupted the construction industry by, among other things, paying bribes to

obtain work and other benefits, defrauding the government by failing to pay millions of

dollars in taxes and endangering the public by fraudulently procuring required safety

certifications.   The defendants and their co-conspirators also took steps to conceal their

activities from law enforcement, including through the use of nominee owners, check-

cashing businesses, fraudulent and inflated requests for payment and false financial records.

Certain defendants and co-conspirators also engaged in obstructive conduct, including the

destruction of records and the creation of fraudulent documents.

A.     The Schemes to Conceal MARTINO's Finances

17.     In 2004, the defendants RICHARD MARTINO and ANDREW

CAMPOS, together with others, were charged in the Eastern District of New York with a

variety of offenses committed in connection with their association with the Gambino crime

family (the "First EDNY Case").   Following their guilty pleas to certain crimes, the

defendants RICHARD MARTINO and ANDREW CAMPOS were each sentenced to terms of incarceration and ordered to pay both forfeiture and restitution.

18.     After the defendant RICHARD MARTINO's release from the custody of the United States Bureau of Prisons in approximately July 2014, the United States Attorney's Office for the Eastern District of New York sought to enforce the remaining amount of forfeiture owed by MARTINO (the "MARTINO Forfeiture Money Judgment"). To avoid satisfying the MARTINO Forfeiture Money Judgment, among other things, MARTINO and the defendant FRANK TARUL concealed MARTINO's substantial wealth and income.

19.     For example, on or about July 10, 2017, the defendant RICHARD MARTINO falsely certified to the United States Probation Department that, among other things he worked at FRANK TARUL's flooring company and did not operate any businesses.  In fact, at that time, MARTINO did not work for FRANK TARUL but instead controlled numerous companies (the "MARTINO Companies") that conducted millions of dollars' worth of financial transactions, including construction work, investments in pizzerias and other business ventures.   In addition, to hide MARTINO's association with the MARTINO Companies, FRANK TARUL opened multiple bank accounts at Bank of America, N.A., JPMorgan Chase, N.A. and Orange Bank and Trust Company variously in the name of the MARTINO Companies and identified himself as the principal, when in fact MARTINO controlled the MARTINO Companies.

B.     The CWC-Related Schemes

20.     Since approximately December 2013, the defendant ANDREW CAMPOS was the principal of CWC Construction Corp. and its affiliates, including Eastern

Interiors LLC ("Eastern," together with CWC Construction Corp., "CWC"). CWC was a company that performed carpentry work at various construction projects in the New York City metropolitan area. Other defendants also held positions at CWC, as follows:

        (a)    The defendant RICHARD MARTINO had an ownership interest in CWC.

        (b)    The defendants VINCENT FIORE and MARK KOCAJ, also known as "Chippy," were project managers who also had ownership interests in CWC.

        (c)    The defendant BENITO DIZENZO, also known as "Benny," was a superintendent for various CWC projects.

        (d)    The defendant ███████████ provided labor for various CWC projects.

        (e)    The defendant RENATO BARCA, JR., also known as "Ronny," was an estimator for CWC.

        1.    <u>Relevant Tax Laws</u>

        21.    The Internal Revenue Service ("IRS"), an agency within the United States Department of Treasury, was responsible for administering and enforcing federal revenue laws and regulations regarding ascertainment, computation, assessment and collection of taxes owed to the United States by its citizens and residents.

        22.    In order to accurately assess and collect taxes, the IRS had to, among other things, determine taxpayers' actual income, credits and deductions. To do that, the IRS used, among other means, tax returns filed pursuant to the tax laws of the United States, as set forth in Title 26 of the United States Code, including as follows:

(a)     Individuals:   Every citizen and resident of the United States who received gross income in excess of the minimum filing amount established by law for a particular tax year was required to file a United States Individual Income Tax return for that year on an Individual Income Tax Return, Form 1040 ("Form 1040").

(b)     Corporations:   In general, all domestic corporations in existence for any part of a tax year were required to file an income tax return for that year, whether or not they had any taxable income.   A corporation generally was required to file with the IRS a United States Corporation Income Tax Return, Form 1120 ("Form 1120"), or a United States Income Tax Return for an S Corporation, Form 1120S ("Form 1120S"), to report its gross receipts, income, gains, losses, deductions, credits and income tax liabilities. If a corporation had employees, then it generally was required to withhold certain taxes from its employees' pay, including certain amounts owed by employees as income tax. Employers had a duty to collect, truthfully account for and pay over to the IRS Federal Insurance Contributions Act ("FICA") taxes owed by the employer as well as taxes on behalf of their employees to fund various federal benefit programs, including Social Security and Medicare.   Under the withholding system, taxes withheld from employees were credited to the employees in payment of their tax liabilities.   Every three months, a corporation was required to report how much in wages it withheld from its employees by filing with the IRS a United States Employer's Quarterly Federal Tax Return, Form 941 ("Form 941").   In addition, every employer generally was required to file and provide to its employees a United

States Wage and Tax Statement, Form W-2 ("Form W-2"), to report, among other things, the income tax withheld from the employee and paid to the IRS.

### 2.   Payroll Tax Avoidance Scheme

23.    Between approximately June 2014 and the present, the defendants ANDREW CAMPOS, ███████████████ VINCENT FIORE and MARK KOCAJ, together with others, engaged in a scheme to pay CWC employees in cash without making the required payroll tax withholdings and payments.   At times, some CWC employees were paid entirely in cash.   At other times, the employees were paid in part by check, with withholdings having been made only for the portion of pay covered by the check, and in part by cash, without the required withholdings having been made.   To facilitate this scheme, the co-conspirators made use of check-cashing businesses, cashing millions of dollars in checks issued by CWC to certain entities and distributing the cash to CWC employees without making the required tax withholdings.

### 3.   Honest Services Wire Fraud Schemes

24.    Between approximately June 2018 and June 2019, the defendants ANDREW CAMPOS, BENITO DIZENZO, VINCENT FIORE and MARK KOCAJ, together with others, engaged in a series of wire fraud schemes by, among other things, paying and agreeing to pay bribes and kickbacks to multiple employees of construction companies in exchange for their support of CWC, including awarding contracts to CWC, securing payments to CWC and assisting in the approval of "change orders," which were necessary when work was added or deleted from the original scope of work in a contract. These bribes and kickbacks were made in cash and through in-kind benefits in the form of, among other things, free labor and construction materials.

(a)     Construction Company #1

25.     Between approximately June 2018 and June 2019, the defendants

ANDREW CAMPOS, BENITO DIZENZO, MARK KOCAJ and VINCENT FIORE,

together with other others, paid hundreds of thousands of dollars in bribes and kickbacks to

multiple Construction Company #1 employees, including the defendant JOHN

SIMONLACAJ, in exchange for, among other things, assistance in awarding contracts to

CWC, approving CWC change orders and securing payments to CWC.  For example, CWC

paid bribes and kickbacks to SIMONLACAJ in the form of, among other things, free labor

and materials used to perform extensive renovations at SIMONLACAJ's residence in

Scarsdale, New York.

(b)     Construction Company #2

26.     Between approximately December 2018 and June 2019, the defendants

VINCENT FIORE and BENITO DIZENZO, together with others, paid bribes and kickbacks

to employees of a construction development company ("Construction Company #2"), the

identity of which is known to the Grand Jury, which served as, among other things, the

developer of a project in Yonkers, New York on which CWC worked.  For example, during

this period, the defendants VINCENT FIORE and BENITO DIZENZO provided free labor

and materials at a location in White Plains, New York, which became a business associated

with an employee of Construction Company #2 in exchange for, among other things, the

employee's assistance in approving change orders.

(c)     Construction Company #3

27.     The defendant VINCENT FIORE, together with others, paid bribes and

kickbacks to employees of a construction company ("Construction Company #3"), the

identity of which is known to the Grand Jury, which served as the general contractor of a

project located in New York, New York on which CWC worked.   For example, between

January 2019 and May 2019, FIORE procured valuable tickets to amusement parks in

Orlando, Florida and gave them to an employee of Construction Company #3 in exchange

for, among other things, the employee's assistance in approving change orders.

          (d)     Other Construction Companies

        28.     In addition to the illicit payments to employees of Construction

Company #1, Construction Company #2 and Construction Company #3, the defendants and

their co-conspirators also paid bribes and kickbacks to employees of other construction

companies through, among other things, in-kind benefits, such as free labor and materials at

the employees' homes in exchange for, among other things, the employees' assistance in

approving change orders.

         4.     Overbilling Scheme

        29.     Between approximately June 2018 and May 2019, the defendants

ANDREW CAMPOS, VINCENT FIORE and MARK KOCAJ, together with others, also

perpetrated a scheme to defraud by submitting fraudulent change orders to two construction

companies ("Construction Company #4" and "Construction Company #5"), the identities of

which are known to the Grand Jury, that served as the general contractors for, among others,

projects located in New York, New York and Yonkers, New York, respectively.

        30.     Under CWC's contracts with Construction Company #4 and

Construction Company #5, if a change order increased the cost of a project, the general

contractors would pay the increased cost of the change order plus an agreed-upon percentage.

The defendants ANDREW CAMPOS, VINCENT FIORE and MARK KOCAJ submitted

multiple change orders that inflated the true costs of the change orders, which caused them to earn far in excess of the agreed-upon profit.   In other circumstances, the change orders requested payment for work that would not be performed at the construction project at all, including, for instance, work performed at construction executives' homes as bribes and kickbacks.

31.   In addition, the defendant VINCENT FIORE, together with others, used CWC to perform renovations at both the home of his mother in New Jersey (the "FIORE New Jersey Residence") and a home he purchased in May 2019 in Briarcliff Manor, New York (the "FIORE New York Residence," together with the FIORE New Jersey Residence, the "FIORE Residences").   FIORE also stole materials from CWC projects and used them to renovate the FIORE Residences and caused CWC to submit change orders to, among others, Construction Company #5, which fraudulently sought payment for some of the costs incurred by CWC for work performed at the FIORE Residences.

5.   Additional Checks Scheme

32.   Beginning in approximately October 2014, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, caused CWC to issue checks to associates for work that was never performed (the "Additional Checks").   These associates went to check-cashing businesses, cashed the Additional Checks and returned the money to the defendants.   The defendants and their co-conspirators completed documentation falsely stating that these Additional Checks were for work performed in connection with CWC construction projects.

6.    Dorset Properties Scheme

33.    In approximately 2018, the defendant ANDREW CAMPOS began constructing a home located on Dorset Road in Scarsdale, New York (the "CAMPOS Residence"). The labor and materials were paid for by CWC using the proceeds of multiple frauds. To justify the expenditure of hundreds of thousands of dollars on his home, ANDREW CAMPOS created a company called Dorset Properties LLC ("Dorset Properties"), of which he and his wife were the owners. This work was accounted for in CWC's financial statements as a project for which CWC served as the general contractor and Dorset Properties was the customer. Although Dorset Properties reimbursed CWC for a portion of the expenses it incurred in constructing the CAMPOS Residence, as of June 2019, CWC had paid over $350,000 in materials and expenses relating to the construction of the CAMPOS Residence that had not been reimbursed.

7.    OSHA False Statements Scheme

34.    Certain defendants conspired to make false statements to the United States Department of Labor (the "DOL") in connection with its administration of its Occupational Safety and Health Act ("OSHA") Outreach Training Program ("OTP") to fraudulently procure cards indicating their completion of required construction training courses. OSHA OTP training instructors were required, among other things, to file OTP training reports with the DOL after each training session that certified, among other things, the individuals who attended each class.

35.    Between approximately January 2018 and May 2019, the defendants RENATO BARCA, JR., ANDREW CAMPOS, GEORGE CAMPOS, JAMES CIACCIA, BENITO DIZENZO, VINCENT FIORE, MARK KOCAJ and MICHAEL TARUL, together

with others, fraudulently acquired OSHA OTP cards by agreeing with an OTP instructor (the "Instructor") to falsely report to the DOL that they had completed certain OTP courses. These defendants also falsely certified to a training company that certain CWC supervisors had completed required OSHA OTP courses and additional training to obtain site supervisor training cards, which were required by New York City law.

C.    Obstructive Conduct

36.    The defendants ANDREW CAMPOS and VINCENT FIORE, together with others, engaged in obstructive conduct to attempt to shield their criminal activities from law enforcement.  For example, between approximately May 2019 and June 2019, the defendant VINCENT FIORE instructed others to destroy documents, including payroll records.  In addition, in or about November 2019, ANDREW CAMPOS and FIORE directed an individual to falsely take responsibility for conduct relating to the Additional Checks scheme described above.  Specifically, FIORE directed that ANDREW CAMPOS would pay for the individual's legal expenses and possible financial penalties for, among other things, cashing the Additional Checks and returning the money to FIORE. Furthermore, between approximately October 2019 and November 2019, FIORE instructed an individual to create a false invoice to justify work that CWC workers had performed at the FIORE New York Residence and to falsely state to law enforcement that FIORE had paid for the work if questioned about that work.

## COUNT ONE
### (Racketeering Conspiracy)

37.    The allegations contained in paragraphs one through 36 are realleged and incorporated as if fully set forth in this paragraph.

38.     In or about and between February 2013 and the present, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ANDREW CAMPOS, BENITO DIZENZO, also known as "Benny," VINCENT

FIORE, MARK KOCAJ, also known as "Chippy," RICHARD MARTINO and FRANK

TARUL, also known as "Bones," together with others, being persons employed by and

associated with the Gambino crime family, an enterprise that engaged in, and the activities of

which affected, interstate and foreign commerce, did knowingly and intentionally conspire to

violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate,

directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of

racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and

1961(5), consisting of the racketeering acts set forth below.   Each defendant agreed that a

conspirator would commit at least two acts of racketeering in the conduct of the affairs of the

enterprise.

### RACKETEERING ACTS ONE THROUGH FOUR
(Bank Fraud)

39.     On or about the dates set forth below, such dates being approximate

and inclusive, within the Southern District of New York, the defendants RICHARD

MARTINO and FRANK TARUL, together with others, did knowingly and intentionally

execute a scheme and artifice to defraud one or more financial institutions, the deposits of

which were insured by the Federal Deposit Insurance Corporation, to wit: the financial

institutions set forth below, and to obtain moneys, funds, credits, assets and other property

owned by, and under the custody and control of, such financial institutions by means of

materially false and fraudulent pretenses, representations and promises, to wit: falsely stating

that FRANK TARUL was the principal of the entities set forth below, when in fact

MARTINO was the principal of those entities, in violation of Title 18, United States Code,

Sections 1344 and 2:

| RACKETEERING ACT | APPROXIMATE DATES | FINANCIAL INSTITUTION | ENTITY |
|---|---|---|---|
| ONE | February 2013 to December 2018 | Bank of America, N.A. | Global Ventures Business Advisors, LLC |
| TWO | February 2015 to March 2018 | JPMorgan Chase, N.A. | Narragansett Enterprises LLC |
| THREE | January 2017 to September 2019 | JPMorgan Chase, N.A. | 23 North Main Street LLC |
| FOUR | January 2019 to September 2019 | Orange Bank and Trust Company | Global Ventures Business Advisors, LLC |

RACKETEERING ACT FIVE
(Wire Fraud – Payroll Tax Violations)

40.    In or about and between June 2014 and the present, both dates being

approximate and inclusive, within the Southern District of New York, the defendants

ANDREW CAMPOS, VINCENT FIORE and MARK KOCAJ, together with others, did

knowingly and intentionally devise a scheme and artifice to defraud the IRS, and to obtain

money and property from the IRS by means of one or more materially false and fraudulent

pretenses, representations and promises, to wit: false and fraudulent Form 941 and Form

1120S tax returns for CWC, and for the purpose of executing such scheme and artifice, to

transmit and cause to be transmitted, by means of wire communication in interstate and

foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate

e-mails, in violation of Title 18, United States Code, Sections 1343 and 2.

## RACKETEERING ACT SIX
(Conspiracy to Obstruct Justice/Obstruction of Justice –
MARTINO Forfeiture Money Judgment)

41.     The defendants RICHARD MARTINO and FRANK TARUL agreed to

the commission of the following acts, either one of which alone constitutes Racketeering Act

Six:

A.      Conspiracy to Obstruct Justice

42.     In or about and between July 2014 and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants RICHARD MARTINO and FRANK TARUL, together with others, did

knowingly and intentionally conspire to corruptly obstruct, influence and impede an official

proceeding, to wit: the enforcement of the MARTINO Forfeiture Money Judgment, contrary

to Title 18, United States Code, Section 1512(c)(2), in violation of Title 18, United States

Code, Section 1512(k).

B.      Obstruction of Justice

43.     In or about and between July 2014 and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants RICHARD MARTINO and FRANK TARUL, together with others, did

knowingly, intentionally and corruptly obstruct, influence and impede an official proceeding,

to wit: the enforcement of the MARTINO Forfeiture Money Judgment, and attempt to do so,

in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

## RACKETEERING ACT SEVEN
(Money Laundering – Additional Checks Scheme)

44.     The defendants ANDREW CAMPOS and VINCENT FIORE agreed to

the commission of the following acts, any one of which alone constitutes Racketeering Act

Seven:

A.     Money Laundering Conspiracy

45.     In or about and between October 2014 and June 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did

knowingly and intentionally conspire (i) to conduct financial transactions affecting interstate

and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to

wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the

property involved in the financial transactions represented the proceeds of some form of

unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity,

contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the

transactions were designed in whole and in part to conceal and disguise the nature, location,

source, ownership and control of the proceeds of specified unlawful activity, contrary to Title

18, United States Code, Section 1956(a)(1)(B)(i); and (ii) to engage in monetary transactions

in and affecting interstate commerce in criminally derived property of a value greater than

$10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of

Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section

1957(a), all in violation of Title 18, United States Code, Section 1956(h).

B.    Money Laundering – Section 1956

46.    In or about and between October 2014 and June 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly and intentionally conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2; and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

C.    Money Laundering – Section 1957

47.    In or about and between October 2014 and June 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly and intentionally engage and attempt to engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Sections 1957(a) and 2.

## RACKETEERING ACT EIGHT
(Wire Fraud – Tax Evasion)

48.     In or about and between October 2014 and the present, both dates being approximate and inclusive, within the Southern District of New York, the defendant ANDREW CAMPOS, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the IRS, and to obtain money and property from the IRS by means of one or more materially false and fraudulent pretenses, representations and promises, to wit: false and fraudulent Form 1120S tax returns for CWC, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate e-mails, in violation of Title 18, United States Code, Sections 1343 and 2.

## RACKETEERING ACT NINE
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit – John Doe)

49.     The defendants ANDREW CAMPOS and VINCENT FIORE agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Nine:

A.     Extortionate Collection of Credit Conspiracy

50.     In or about and between February 2018 and September 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect one or more extensions of credit from John Doe, an individual whose

identity is known to the Grand Jury, in violation of Title 18, United States Code, Section
894(a)(1).

    B.    Extortionate Collection of Credit

        51.    In or about and between February 2018 and September 2019, both
dates being approximate and inclusive, within the Eastern District of New York and
elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with
others, did knowingly and intentionally participate in the use of extortionate means to collect
and attempt to collect one or more extensions of credit from John Doe, in violation of Title
18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT TEN
(Money Laundering – Dorset Properties)

        52.    The defendant ANDREW CAMPOS agreed to the commission of the
following acts, any one of which alone constitutes Racketeering Act Ten:

    A.    Money Laundering Conspiracy

        53.    In or about and between March 2018 and March 2019, both dates being
approximate and inclusive, within the Eastern District of New York and elsewhere, the
defendant ANDREW CAMPOS, together with others, did knowingly and intentionally
conspire (i) to conduct financial transactions affecting interstate and foreign commerce,
which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in
violation of Title 18, United States Code, Section 1343, knowing that the property involved
in the financial transactions represented the proceeds of some form of unlawful activity
(a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title
18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were

designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (ii) to engage in monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a), all in violation of Title 18, United States Code, Section 1956(h).

     B.    Money Laundering – Section 1956

     54.    In or about and between March 2018 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREW CAMPOS, together with others, did knowingly and intentionally conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2; and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

     C.    Money Laundering – Section 1957

     55.    In or about and between March 2018 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant ANDREW CAMPOS, together with others, did knowingly and intentionally

engage and attempt to engage in one or more monetary transactions in and affecting

interstate commerce in criminally derived property of a value greater than $10,000 that was

derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United

States Code, Section 1343, in violation of Title 18, United States Code, Sections 1957(a) and

2.

### RACKETEERING ACT ELEVEN
(Wire Fraud – Construction Company #1)

56.    In or about and between June 2018 and June 2019, both dates being

approximately and inclusive, within the Southern District of New York, the defendants

ANDREW CAMPOS, BENITO DIZENZO, VINCENT FIORE and MARK KOCAJ,

together with others, did knowingly and intentionally devise a scheme and artifice to defraud

Construction Company #1, including to deprive Construction Company #1 of its right to

honest services, and to obtain money and property from Construction Company #1 by means

of materially false and fraudulent pretenses, representations and promises, and for the

purpose of executing such scheme and artifice, to transmit and cause to be transmitted by

means of wire communication in interstate and foreign commerce, one or more writings,

signs, signals, pictures and sounds, to wit: interstate e-mails and text messages, in violation

of Title 18, United States Code, Sections 1343, 1346 and 2.

### RACKETEERING ACT TWELVE
(Wire Fraud – Overbilling Scheme)

57.    In or about and between June 2018 and May 2019, both dates being

approximate and inclusive, within the Southern District of New York, the defendants

ANDREW CAMPOS, VINCENT FIORE and MARK KOCAJ, together with others, did

knowingly and intentionally devise a scheme and artifice to defraud Construction Company #4 and Construction Company #5, and to obtain money and property from Construction Company #4 and Construction Company #5 by means of materially false and fraudulent pretenses, representations and promises, to wit: fraudulent and inflated change orders and requisition forms, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate e-mails, in violation of Title 18, United States Code, Sections 1343 and 2.

RACKETEERING ACT THIRTEEN
(Wire Fraud – Construction Company #2)

58.     In or about and between December 2018 and June 2019, both dates being approximately and inclusive, within the Southern District of New York, the defendants BENITO DIZENZO and VINCENT FIORE, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Construction Company #2, including to deprive Construction Company #2 of its right to honest services, and to obtain money and property from Construction Company #2 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate e-mails, in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

RACKETEERING ACT FOURTEEN
(Wire Fraud – Construction Company #3)

59.     In or about and between January 2019 and May 2019, both dates being approximately and inclusive, within the Southern District of New York, the defendant

VINCENT FIORE, together with others, did knowingly and intentionally devise a scheme

and artifice to defraud Construction Company #3, including to deprive Construction

Company #3 of its right to honest services, and to obtain money and property from

Construction Company #3 by means of materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing such scheme and artifice, to

transmit and cause to be transmitted by means of wire communication in interstate and

foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate

e-mails and text messages, in violation of Title 18, United States Code, Sections 1343, 1346

and 2.

RACKETEERING ACT FIFTEEN

(Obstruction of Justice Conspiracy/Obstruction of Justice – Payroll Documents)

60.     The defendant VINCENT FIORE agreed to the commission of the

following acts, either one of which alone constitutes Racketeering Act Fifteen:

A.     Obstruction of Justice Conspiracy

61.     In or about and between May 2019 and June 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT FIORE, together with others, did knowingly and intentionally conspire

to corruptly alter, destroy, mutilate and conceal one or more records, documents and other

objects, to wit: payroll documents, with the intent to impair the objects' integrity and

availability for use in an official proceeding, to wit: a Federal grand jury investigation in the

Eastern District of New York, contrary to Title 18, United States Code, Section 1512(c)(1),

in violation of Title 18, United States Code, Section 1512(k).

B.      Obstruction of Justice

62.     In or about and between May 2019 and June 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT FIORE, together with others, did knowingly, intentionally and

corruptly alter, destroy, mutilate and conceal one or more records, documents and other

objects, to wit: payroll documents, with the intent to impair the objects' integrity and

availability for use in an official proceeding, to wit: a Federal grand jury investigation in the

Eastern District of New York, and attempt to do so, in violation of Title 18, United States

Code, Sections 1512(c)(1) and 2.

RACKETEERING ACT SIXTEEN
(Obstruction of Justice Conspiracy/Obstruction of Justice – Additional Checks Scheme)

63.     The defendants ANDREW CAMPOS and VINCENT FIORE agreed to

the commission of the following acts, either one of which alone constitutes Racketeering Act

Sixteen:

A.      Obstruction of Justice Conspiracy

64.     In or about November 2019, within the Eastern District of New York

and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with

others, did knowingly and intentionally conspire to corruptly obstruct, influence and impede

an official proceeding, to wit: a Federal grand jury investigation in the Eastern District of

New York, contrary to Title 18, United States Code, Section 1512(c)(2), in violation of Title

18, United States Code, Section 1512(k).

B.     Obstruction of Justice

65.     In or about November 2019, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly, intentionally and corruptly obstruct, influence and impede an official proceeding, to wit: a Federal grand jury investigation in the Eastern District of New York, and attempt to do so, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT TWO
(Bank Fraud Conspiracy)

66.     The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

67.     In or about and between February 2013 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RICHARD MARTINO and FRANK TARUL, also known as "Bones," together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud one or more financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation, to wit: Bank of America, N.A., JPMorgan Chase, N.A. and Orange Bank & Trust Company, and to obtain moneys, funds, credits, assets and other property owned by, and under the custody and control of, such financial institutions by means of materially false and fraudulent pretenses, representations and promises, to wit: falsely stating that FRANK TARUL was the principal of certain entities when in fact

MARTINO was the principal of those entities, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

<u>COUNT THREE</u>
(Wire Fraud Conspiracy – Payroll Tax Violations)

68.     The allegations contained in paragraphs one through 16 and 20 through 23 are realleged and incorporated as if fully set forth in this paragraph.

69.     In or about and between June 2014 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS,                          VINCENT FIORE and MARK KOCAJ, also known as "Chippy," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the IRS, and to obtain money and property from the IRS by means of one or more materially false and fraudulent pretenses, representations and promises, to wit: false and fraudulent Form 941 and Form 1120S tax returns for CWC, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate e-mails, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT FOUR
(Conspiracy to Obstruct Justice –
MARTINO Forfeiture Money Judgment)

70.     The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

71.     In or about and between July 2014 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RICHARD MARTINO and FRANK TARUL, also known as "Bones," together with others, did knowingly and intentionally conspire to corruptly obstruct, influence and impede an official proceeding, to wit: the enforcement of the MARTINO Forfeiture Judgment, contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

## COUNT FIVE
(Obstruction of Justice – MARTINO Forfeiture Money Judgment)

72.     The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

73.     In or about and between July 2014 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RICHARD MARTINO and FRANK TARUL, also known as "Bones," together with others, did knowingly, intentionally and corruptly obstruct, influence and impede an official proceeding, to wit: the enforcement of the MARTINO Forfeiture Judgment, and attempt to do so.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

COUNT SIX
(Wire Fraud Conspiracy – Tax Evasion)

74.     The allegations contained in paragraphs one through 16 and 20 through

33 are realleged and incorporated as if fully set forth in this paragraph.

75.     In or about and between October 2014 and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant ANDREW CAMPOS, together with others, did knowingly and intentionally

conspire to devise a scheme and artifice to defraud the IRS, and to obtain money and

property from the IRS by means of one or more materially false and fraudulent pretenses,

representations and promises, to wit: false and fraudulent Form 1120S tax returns for CWC,

and for the purpose of executing such scheme and artifice, to transmit and cause to be

transmitted, by means of wire communication in interstate and foreign commerce, one or

more writings, signs, signals, pictures and sounds, to wit: interstate e-mails, contrary to Title

18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT SEVEN
(Money Laundering Conspiracy – Additional Checks Scheme)

76.     The allegations contained in paragraphs one through 16 and 20 through

32 are realleged and incorporated as if fully set forth in this paragraph.

77.     In or about and between October 2014 and June 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did

knowingly and intentionally conspire (i) to conduct financial transactions affecting interstate

and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to

wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the

property involved in the financial transactions represented the proceeds of some form of

unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity,

contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the

transactions were designed in whole and in part to conceal and disguise the nature, location,

source, ownership and control of the proceeds of specified unlawful activity, contrary to Title

18, United States Code, Section 1956(a)(1)(B)(i); and (ii) to engage in monetary transactions

in and affecting interstate commerce in criminally derived property of a value greater than

$10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of

Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section

1957(a).

(Title 18, United States Code, Sections 1956(h), 1956(a)(1), 1957(b) and 3551

et seq.)

### COUNT EIGHT
(Money Laundering – Additional Checks Scheme)

78.     The allegations contained in paragraphs one through 16 and 20 through

32 are realleged and incorporated as if fully set forth in this paragraph.

79.     In or about and between October 2014 and June 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did

knowingly and intentionally conduct financial transactions affecting interstate and foreign

commerce, which in fact involved the proceeds of specified unlawful activity, to wit: wire

fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property

involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity; and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and 3551 et seq.)

## COUNT NINE
(Money Laundering – Additional Checks Scheme)

80.     The allegations contained in paragraphs one through 16 and 20 through 32 are realleged and incorporated as if fully set forth in this paragraph.

81.     In or about and between October 2014 and June 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly and intentionally engage and attempt to engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

## COUNT TEN
(Conspiracy to Make False Statements)

82.     The allegations contained in paragraphs one through 16, 20, 34 and 35 are realleged and incorporated as if fully set forth in this paragraph.

83.     In or about and between January 2018 and June 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RENATO BARCA, JR., also known as "Ronny," ANDREW CAMPOS, GEORGE CAMPOS, JAMES CIACCIA, BENITO DIZENZO, also known as "Benny," VINCENT FIORE, MARK KOCAJ, also known as "Chippy," and MICHAEL TARUL, also known as "Perkins," together with others, did knowingly and willfully conspire to make one or more materially false, fictitious and fraudulent statements and representations, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the administration by the DOL of the OSHA Outreach Training Program, or "OTP," in that the defendants, together with others, agreed to state and represent that certain individuals had attended certain OTP courses, when, in fact, as the defendants then and there well knew and believed, said individuals had not attended said courses, contrary to Title 18, United States Code, Section 1001(a)(2).

84.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants BARCA, ANDREW CAMPOS, GEORGE CAMPOS, CIACCIA, DIZENZO, FIORE, KOCAJ and MICHAEL TARUL, together with others, committed and caused to be committed, among others, the following:

### OVERT ACTS

(a)     On or about January 11, 2018, the Instructor sent a text message to FIORE stating, "Make sure [co-conspirators] know they did the class Monday and Tuesday afternoon from 2:30 to 7:30 at 396 broadway job."

(b)     On or about January 14, 2018, the Instructor sent a text message to FIORE stating, "I got Osha cards Saturday for [co-conspirators] I be at [a location in

Manhattan] about 9:00 am. Monday You must have those paperwork all signed.   Thank you."

(c)   On or about March 27, 2018, the Instructor submitted an OTP report to the DOL that falsely stated that co-conspirators had attended one or more OTP courses at CWC's office building administered by the Instructor.

(d)   On or about March 31, 2018, the Instructor sent a text message to FIORE stating, "I got the Osha cards for you and the 10 hour Osha cards for your friend he has to give me 2400 cash and pick up cards Monday morning at my job . . . ."

(e)   On or about May 6, 2019, the Instructor submitted an OTP report to the DOL that falsely stated that ANDREW CAMPOS, GEORGE CAMPOS and KOCAJ, among others, had attended one or more OTP courses administered at CWC's office building.

(f)   On or about May 6, 2019, the Instructor submitted an OTP report to the DOL that falsely stated that ANDREW CAMPOS, GEORGE CAMPOS, KOCAJ and MICHAEL TARUL, among others, had attended one or more OTP courses at CWC's office building administered by the Instructor.

(g)   On or about May 10, 2019, BARCA sent a text message to the Instructor asking, "30's come in?"

(h)   On or about May 16, 2019, BARCA sent a text message to MICHAEL TARUL stating, "I have your Osha cards."

(i)   On or about May 21, 2019, the Instructor submitted an OTP report to the DOL that falsely stated that CIACCIA and DIZENZO, among others, had attended one or more OTP courses at CWC's office building administered by the Instructor.

        (j)      On or about May 28, 2019, the Instructor sent a text message to BARCA stating, "Got your osha cards be home all week."

        (k)      On or about May 28, 2019, BARCA sent a text message to the Instructor stating, in part, that BARCA "put that check in the mail with the paper work."

        (l)      On or about May 29, 2019, BARCA sent to CIACCIA a photograph of an OSHA card bearing CIACCIA's name.

        (m)      On or about May 30, 2019, BARCA sent a text message to the Instructor stating, "Can I add 1 more guy to that class" and stating the name of a co-conspirator.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT ELEVEN
(Extortionate Collection of Credit Conspiracy – John Doe)

        85.      The allegations contained in paragraphs one through 16 and 20 are realleged and incorporated as if fully set forth in this paragraph.

        86.      In or about and between February 2018 and September 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect one or more extensions of credit from John Doe.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT TWELVE
(Extortionate Collection of Credit – John Doe)

87.     The allegations contained in paragraphs one through 16 and 20 are reordered and incorporated as if fully set forth in this paragraph.

88.     In or about and between February 2018 and September 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT THIRTEEN
(Money Laundering Conspiracy – Dorset Properties Scheme)

89.     The allegations contained in paragraphs one through 16, 20 and 33 are reordered and incorporated as if fully set forth in this paragraph.

90.     In or about and between March 2018 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREW CAMPOS, together with others, did knowingly and intentionally conspire (i) to conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership

and control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (ii) to engage in monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h), 1956(a)(1), 1957(b) and 3551 et seq.)

## COUNT FOURTEEN
(Money Laundering – Dorset Properties Scheme)

91.     The allegations contained in paragraphs one through 16, 20 and 33 are realleged and incorporated as if fully set forth in this paragraph.

92.     In or about and between March 2018 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREW CAMPOS, together with others, did knowingly and intentionally conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity; and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and 3551 et seq.)

COUNT FIFTEEN

(Money Laundering – Dorset Properties Scheme)

93.    The allegations contained in paragraphs one through 16, 20 and 33 are realleged and incorporated as if fully set forth in this paragraph.

94.    In or about and between March 2018 and March 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREW CAMPOS, together with others, did knowingly and intentionally engage and attempt to engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

COUNT SIXTEEN

(Wire Fraud Conspiracy – Construction Company #1)

95.    The allegations contained in paragraphs one through 16, 20, 24, 25 and 30 are realleged and incorporated as if fully set forth in this paragraph.

96.    In or about and between June 2018 and June 2019, both dates being approximately and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS, BENITO DIZENZO, also known as "Benny," VINCENT FIORE, MARK KOCAJ, also known as "Chippy," and JOHN SIMONLACAJ, also known as "John Si" and "Smiley," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud Construction Company #1, including to deprive Construction Company #1 of its right to honest services, and to obtain money and property from Construction Company #1 by means of materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate e-mails and text messages, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT SEVENTEEN
(Wire Fraud Conspiracy – Overbilling Scheme)

97.     The allegations contained in paragraphs one through 16, 20 and 29 through 31 are realleged and incorporated as if fully set forth in this paragraph.

98.     In or about and between June 2018 and May 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS, VINCENT FIORE and MARK KOCAJ, also known as "Chippy," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud Construction Company #4 and Construction Company #5, and to obtain money and property from Construction Company #4 and Construction Company #5 by means of materially false and fraudulent pretenses, representations and promises, to wit: fraudulent and inflated change orders and requisition forms, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate e-mails, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT EIGHTEEN
(Wire Fraud Conspiracy – Construction Company #2)

99.     The allegations contained in paragraphs one through 16, 20, 24, 26 and 30 are realleged and incorporated as if fully set forth in this paragraph.

100.     In or about and between December 2018 and June 2019, both dates being approximately and inclusive, within the Eastern District of New York and elsewhere, the defendants BENITO DIZENZO, also known as "Benny," and VINCENT FIORE, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud Construction Company #2, including to deprive Construction Company #2 of its right to honest services, and to obtain money and property from Construction Company #2 by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate e-mails, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT NINETEEN
(Wire Fraud Conspiracy – Construction Company #3)

101.     The allegations contained in paragraphs one through 16, 20, 24, 27 and 30 are realleged and incorporated as if fully set forth in this paragraph.

102.     In or about and between January 2019 and May 2019, both dates being approximately and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT FIORE, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud Construction Company #3, including to deprive

Construction Company #3 of its right to honest services, and to obtain money and property

from Construction Company #3 by means of materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing such scheme and artifice, to

transmit and cause to be transmitted by means of wire communication in interstate and

foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate

e-mails and text messages, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWENTY
(Wire Fraud Conspiracy – FIORE Residences)

103.    The allegations contained in paragraphs one through 16, 20, 29 and 31

are realleged and incorporated as if fully set forth in this paragraph.

104.    In or about and between February 2019 and November 2019, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT FIORE, together with others, did knowingly and intentionally conspire

to devise a scheme and artifice to defraud CWC and Construction Company #5, and to obtain

money and property from CWC and Construction Company #5 by means of materially false

and fraudulent pretenses, representations and promises, to wit: fraudulent and inflated payroll

documents and change orders, and for the purpose of executing such scheme and artifice, to

transmit and cause to be transmitted by means of wire communication in interstate and

foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: interstate

e-mails, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWENTY-ONE
(Submission of False Tax Return)

105.     The allegations contained in paragraphs one through 16, 20, 24, 25 and

30 are realleged and incorporated as if fully set forth in this paragraph.

106.     On or about March 15, 2019, within the Southern District of New

York, the defendant JOHN SIMONLACAJ, also known as "John Si" and "Smiley," together

with others, did knowingly and willfully make and subscribe a false and fraudulent Form

1040 for the tax year 2018, which was verified by a written declaration that it was made

under the penalties of perjury and which was filed with the IRS, which tax return

SIMONLACAJ did not believe to be true and correct as to one or more material matters, in

that the return falsely reported a total income of $533,915, whereas, as SIMONLACAJ then

and there well knew and believed, his total income was substantially greater than the

reported amount.

(Title 26, United States Code, Section 7206(1); Title 18, United States Code,

Sections 2 and 3551 et seq.)

## COUNT TWENTY-TWO
(Obstruction of Justice Conspiracy – Payroll Documents)

107.     The allegations contained in paragraphs one through 16, 20 through 23

and 36 are realleged and incorporated as if fully set forth in this paragraph.

108.     In or about and between May 2019 and June 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT FIORE, together with others, did knowingly and intentionally conspire

to corruptly alter, destroy, mutilate and conceal one or more records, documents and other

objects, to wit: payroll documents, with the intent to impair the objects' integrity and

availability for use in an official proceeding, to wit: a Federal grand jury investigation in the

Eastern District of New York, contrary to Title 18, United States Code, Section 1512(c)(1).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

COUNT TWENTY-THREE
(Obstruction of Justice – Payroll Documents)

109.    The allegations contained in paragraphs one through 16, 20 through 23

and 36 are realleged and incorporated as if fully set forth in this paragraph.

110.    In or about and between May 2019 and June 2019, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT FIORE, together with others, did knowingly, intentionally and

corruptly alter, destroy, mutilate and conceal one or more records, documents and other

objects, to wit: payroll documents, with the intent to impair the objects' integrity and

availability for use in an official proceeding, to wit: a Federal grand jury investigation in the

Eastern District of New York, and attempt to do so.

(Title 18, United States Code, Sections 1512(c)(1), 2 and 3551 et seq.)

COUNT TWENTY-FOUR
(Obstruction of Justice – False Invoice)

111.    The allegations contained in paragraphs one through 16, 20, 29, 31 and

36 are realleged and incorporated as if fully set forth in this paragraph.

112.    In or about and between October 2019 and November 2019, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT FIORE, together with others, did knowingly, intentionally and

corruptly obstruct, influence and impede an official proceeding, to wit: a Federal grand jury investigation in the Eastern District of New York, and attempt to do so.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

### COUNT TWENTY-FIVE
(Obstruction of Justice Conspiracy – Additional Checks Scheme)

113.    The allegations contained in paragraphs one through 16, 20 through 32 and 36 are realleged and incorporated as if fully set forth in this paragraph.

114.    In or about November 2019, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly and intentionally conspire to corruptly obstruct, influence and impede an official proceeding, to wit: a Federal grand jury investigation in the Eastern District of New York, contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

### COUNT TWENTY-SIX
(Obstruction of Justice – Additional Checks Scheme)

115.    The allegations contained in paragraphs one through 16, 20 through 32 and 36 are realleged and incorporated as if fully set forth in this paragraph.

116.    In or about November 2019, within the Eastern District of New York and elsewhere, the defendants ANDREW CAMPOS and VINCENT FIORE, together with others, did knowingly, intentionally and corruptly obstruct, influence and impede an official proceeding, to wit: a Federal grand jury investigation in the Eastern District of New York, and attempt to do so.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

117.    The United States hereby gives notice to the defendants charged in

Count One that, upon their conviction of such offense, the government will seek forfeiture

in accordance with Title 18, United States Code, Section 1963(a), which requires any person

convicted of such offense to forfeit: (a) any interest the person acquired or maintained in

violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claim

against, or property or contractual right of any kind affording a source of influence over any

enterprise which the person has established, operated, controlled, conducted or participated

in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any

property constituting, or derived from, any proceeds which the person obtained, directly or

indirectly, from racketeering activity or unlawful debt collection, in violation of Title 18,

United States Code, Section 1962, including but not limited to all right, title and interest in:

(i) the real property and premises located at 288 Old Briarcliff Road, Briarcliff Manor, New

York 10510, title to which is held in the name of the defendant VINCENT FIORE, and all

proceeds traceable thereto; (ii) the real property and premises located at 32 Laramie Trail,

Hewitt, New Jersey 07421, title to which is held in the name of a straw owner/nominee of

the defendant VINCENT FIORE, and all proceeds traceable thereto; and (iii) the real

property and premises located at 89 Dorset Road, Scarsdale, New York 10583, title to which

is held in the name of the defendant ANDREW CAMPOS and/or his entity Dorset

Properties, LLC, and all proceeds traceable thereto.

118.    If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TWO

119.    The United States hereby gives notice to the defendants charged in Count Two that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

120.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21,

United States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH SIX, ELEVEN, TWELVE, SIXTEEN THROUGH TWENTY AND TWENTY-TWO THROUGH TWENTY-FOUR

121.     The United States hereby gives notice to the defendants charged in

Counts Three through Six, Eleven, Twelve, Sixteen through Twenty and Twenty-Two

through Twenty-Six that, upon their conviction of any such offenses, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), which require any person convicted of any

such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds

obtained directly or indirectly as a result of such offenses, including but not limited to all

right, title and interest in: (i) the real property and premises located at 288 Old Briarcliff

Road, Briarcliff Manor, New York 10510, title to which is held in the name of the defendant

VINCENT FIORE, and all proceeds traceable thereto; (ii) the real property and premises

located at 32 Laramie Trail, Hewitt, New Jersey 07421, title to which is held in the name of a

straw owner/nominee of the defendant VINCENT FIORE, and all proceeds traceable thereto;

(iii) the real property and premises located at 89 Dorset Road, Scarsdale, New York 10583,

title to which is held in the name of the defendant ANDREW CAMPOS and/or his entity

Dorset Properties, LLC, and all proceeds traceable thereto; and (iv) the real property and

premises located at 326 Fort Hill Road, Scarsdale, New York 10583, title to which is held in

the name of defendant JOHN SIMONLACAJ, and all proceeds traceable thereto.

      122.    If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

      (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States

Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION AS TO
## COUNTS SEVEN THROUGH NINE AND THIRTEEN THROUGH FIFTEEN

      123.    The United States hereby gives notice to the defendants charged in

Counts Seven through Nine and Thirteen through Fifteen that, upon their conviction of any

such offenses, the government will seek forfeiture in accordance with Title 18, United States

Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any

property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to all right, title and interest in the real property and premises located at 89 Dorset Road, Scarsdale, New York 10583, title to which is held in the name of defendant ANDREW CAMPOS and/or his entity Dorset Properties, LLC, and all proceeds traceable thereto.

124.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Sections 853(a) and 853(p))


A TRUE BILL

████████████████████████████████

FOREPERSON


RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F. # 2015R00270

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

RENATO BARCA, JR., *et al.*

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 894(a)(1), 981(a)(1)(C), 982(a)(1), 982(a)(2), 982(b)(1), 1349, 1512(c)(1), 1512(c)(2), 1512(k), 1956(a)(1), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(h), 1957(a), 1957(b), 1962(d), 1963, 1963(a), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C., §§ 853(a) and 853(p); T. 26, U.S.C., § 7206(1); T. 28, U.S.C., § 2461(c))

_____

*A true bill.*

_____
*Foreperson*

_____

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

**Keith D. Edelman**, *Assistant U.S. Attorney (718) 254-6328*
**Kayla C. Bensing**, *Assistant U.S. Attorney (718) 254-6279*
**Claire S. Kedeshian**, *Assistant U.S. Attorney (718) 254-6051*