UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

JOHN SIMONLACAJ,

    Defendant.

19 CR 575 (AMD)

# DECLARATION OF JOEL A. SICKLER

I, JOEL A. SICKLER, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the founder of, and sentencing specialist for, the Justice Advocacy Group, LLC, a criminal justice consulting firm based in Alexandria, Virginia. The Justice Advocacy Group provides research for and advises criminal defense lawyers, probation departments, and federal judges on federal sentencing issues and matters involving federal confinement.

2. I have been retained by John Simonlacaj to advise on his likely Bureau of Prisons ("BOP") classification and designation, if he is sentenced to a term of incarceration, as well as the likely conditions he would face in federal confinement.

**Education and Experience**

3. I earned a Bachelor of Science in Criminal Justice at Saint Anselm College in Manchester, New Hampshire, and a Master of Science in the Administration of Justice at American University's School of Justice in Washington D.C. Since then, I have practiced as a mitigation specialist and prisoner advocate with expertise in federal sentencing and corrections, with 40 years of experience in the field. My resume and biography are attached hereto as Exhibit A.

4. Over the course of my career, I have prepared over 2,500 evaluations for felony-level defendants facing sentencing in federal courts nationwide. I have submitted sentencing reports in 41 of the 94 federal judicial districts, received 40 federal court appointments as a capital case mitigation specialist, and testified as an expert regarding mitigation findings and recommendations in six federal jurisdictions. I have visited 51 federal prisons and have advised clients with inmate-related matters in 86 of the BOP's 122 institutions. *Id.*

5. I am an associate member of the National Association of Criminal Defense Lawyers and a founding member of the National Association of Sentencing Advocates and Mitigation Specialists, for which I served as Vice President from 1998 to 2000. I speak regularly at conferences and seminars for these associations and am published and cited in the media on the topics of federal sentencing and confinement. *Id.*

### Relevant Issues

6. In this declaration, I set forth the likely impact the ongoing COVID-19 pandemic would have on Mr. Simonlacaj's conditions of confinement, were he to be sentenced to a term of incarceration in a BOP facility.

### Impact of the COVID-19 Pandemic

7. In response to the spread of COVID-19 across BOP facilities, BOP has instituted a strict quarantine requirement for all prisoners (with a few rare exceptions) entering and exiting BOP facilities, regardless of vaccine status. As a result, if Mr. Simonlacaj were sentenced to a term of incarceration, he likely would be placed in quarantine at the beginning and end of his term of incarceration. The conditions of these quarantine confinements are oppressive.

8. Based on my experience, prisoners held in quarantine are almost always housed in an isolation cell usually in the facility's Special Housing Unit (also known as the "SHU" or the

"hole"). Some federal prisons house quarantining inmates is non-SHU cells, but in isolation cells or locked rooms, nonetheless. Such housing is, in essence, solitary confinement. As a general matter, cells in the SHU measure approximately 8 x 10 feet, with no windows except for a small, wire mesh window on the door, to permit observation of the prisoner. The cell includes a bed, toilet, and sink, and sometimes a desk and chair. Prisoners held in quarantine are kept isolated in their cells 24 hours a day, 7 days a week, except for intermittent and brief periods of times for showers (likely three times a week for 15 minutes, thus just 45 minutes out of the 168 hours in a week outside of the 8x10 cell).

9. Prisoners in quarantine are deprived of virtually all human contact. Meals are served under the door. Family and other social visits are not allowed, and while legal visits are not expressly prohibited, I have found that they do not occur in practice. Similarly, prisoners are frequently not allowed to make telephone calls during their quarantine, including legal calls. In some institutions, no mail is allowed. I am aware of many institutions in which, contrary to BOP policy, prisoners in quarantine are kept in their cell, without books or anything else with which to occupy their time during the weeks or even months that they are confined there. Moreover, it is not uncommon for prisoners in quarantine to be precluded from changing clothes other than at the extremely limited shower time and be deprived of a pillow for sleep.

10. In addition, prisoners introduced into the BOP system through quarantine are not offered the standard Admissions and Orientation ("A&O") program until their quarantine is complete. Accordingly, these prisoners do not meet with a case manager, counselor, or unit manager when they arrive at the facility. In addition, they do not receive a physical examination or standard medical tests, or consult with a treatment provider concerning their medications, until the quarantine has concluded. Some however, depending on their needs, do receive medication.

However, based on my experience, it is at best uncertain whether a particular quarantined inmate will or will not receive his or her required medications, including medications for serious conditions.

11.  While BOP policy states that quarantine must extend for "at least" 14 days, in my experience, the current standard length of quarantine is at least 21 days, with some prisoners facing far more extended periods of isolation for reasons outside of their control. For example, one prisoner I have advised, who is currently incarcerated at the Federal Correctional Institution ("FCI") in Allenwood, Pennsylvania, was required to quarantine for a total of 73 days (*i.e.*, approximately 2-1/2 months) because other prisoners on his unit tested positive for COVID-19. I recently had a client serve 32 days in quarantine for the same reasons at FMC Devens in Massachusetts. A third prisoner who I advised, who was designated to serve his term of imprisonment at the minimum-security facility adjacent to the United States Penitentiary ("USP") at Tuscon, Arizona, spent two-thirds of his sentence – 60 of 90 days – in isolation due to COVID-19 quarantine procedures. And I am aware that a fourth prisoner, whose case has been covered in the media, was kept in isolation at USP Lompoc, California for 56 days, despite testing negative for COVID-19 a total of 10 times. All of these prisoners were designated to serve their sentences at minimum or low security facilities but were nonetheless required to serve their periods of quarantine in the SHUs of neighboring, higher-security facilities.

12.  Thus, if a defendant is sentenced to, for example, 60 days incarceration, that person will likely spend 42 of those 60 days in the SHU of a higher security facility under the above-described oppressive conditions. Moreover, if a defendant is sentenced to 30 days incarceration, they will likely spend the entire 30 days in such conditions. A client in California with a 42-day sentence was never released from quarantine.

13.     Notably, the National Commission on Correctional Health Care has recognized that "[p]rolonged (greater than 15 consecutive days) solitary confinement is cruel, inhuman and degrading treatment, and harmful to an individual's health" and advised that "[s]olitary confinement should never exceed 15 days."  The United Nations' Mandela *Standard Minimum Rules for the Treatment of Prisoners (the Mandela Rules)* also prohibit solitary confinement in excess of 15 consecutive days and declares that such conditions amount to "torture or other cruel, inhuman or degrading treatment or punishment."

14.     Even after prisoners are released from quarantine, conditions in the general population of the facility still pose severe risks during the COVID-19 pandemic.  While prisoners are theoretically required to wear masks, other than when they are eating, other precautions – such as hand sanitizer, social distancing, and adequate ventilation – are frequently unavailable.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 1, 2021, in Alexandria, Virginia.

/s/ *Joel A. Sickler*

_____

Joel A. Sickler

# EXHIBIT A

# JOEL A. SICKLER

Sentencing Mitigation Specialist/Prisoner Advocate

**Office Addresses:** 114 N. Alfred Street, STE 330
Alexandria, Virginia 22314
Phone: (703) 574-1075
Fax: (703) 997-6306

**E-Mail**: jsickler@justiceadvocacygroupllc.com

## PROFESSIONAL EXPERIENCE

2003-Present
**Sentencing Specialist/Prisoner Advocate**
**Justice Advocacy Group, LLC**

Helping criminal defense lawyers and their clients with preparation of comprehensive sentencing memoranda and strategic defense sentencing planning. Sentencing guidelines research and analysis. Federal prisoner designation, classification and adjustment to confinement consultation. Prisoner administrative remedy appeals. Capital mitigation investigation and presentation of mitigation evidence. Bail reports: flight/dangerousness assessments. Training. Expert testimony.

I have worked in the field of corrections for more than 30 years and currently head the Justice Advocacy Group, LLC, a consortium of criminal justice professionals based in Alexandria, Virginia. The Justice Advocacy Group provides research for and advises criminal defense lawyers, probation departments and judges on federal sentencing issues and matters involving federal confinement. The firm also provides advocacy services related to federal prisoner designation and classification, and adjustment to confinement. Since 1980, as a criminologist, I have prepared over 2,500 evaluations for felony-level defendants facing sentencing in federal courts nationwide. I have submitted sentencing reports in 41 of the 93 federal judicial districts. I have received 40 federal court-appointments as a capital mitigation specialist and have testified as an expert regarding mitigation findings and recommendations in six federal jurisdictions. I have visited 51 federal prisons and have advised clients with inmate matters in 86 of the Bureau of Prisons' (BOP) 120 institutions. With experience as a correctional counselor in the District of Columbia's Department of Corrections and with prior tenure as Director of Client Services at the National Center on Institutions & Alternatives in Washington, DC, I have worked consistently for the past 30 years on federal sentencing and federal prison-related matters. Based on more than 30 years of experience assisting clients committed to the federal Bureau of Prisons (BOP), I have extensive knowledge of the BOP and its stated mission, services, policies, program statements, regulations, and institutions.

1991-2003
**Director, Client Specific Planning Services**
**National Center on Institutions and Alternatives, Alexandria, Virginia**

Supervision of national, non-profit's sentencing services to courts and defense attorneys overseeing network of regional divisions. Preparation of comprehensive sentencing reports and evaluations in major felony cases. Expert in development and design of multi-component, community-based sentencing plans. State and federal parole representation.

1988-1991
**Principal Criminologist**
**The Sentencing Group, Los Angeles, California**

Founded consulting firm specializing in sentencing research and forensic services to defense lawyers and criminal justice agencies. Court-appointed penalty phase investigator, Los Angeles County Superior Court.

1981-1987
**Senior Case Developer/Administrator**
**National Center on Institutions and Alternatives, Washington, DC**

Produced detailed sentencing profiles and recommended creative sentencing alternatives to federal, state and local courts. Director of NCIA's western regional office advancing Client Specific Planning services to leading criminal defense lawyers. Trained CSP case developers and headed research project with the RAND Corporation studying the effectiveness of community-based dispositions for juvenile offenders. See Academy of Criminal Justice Sciences, "Private Presentence Reports for Serious Juvenile Offenders: Implementation Issues and Impacts," Peter W. Greenwood & Susan Turner, *Justice Quarterly*, Vol. 10, No. 2, June 1993.

1978-1981
**Corrections Officer/Classification and Parole/Probation Officer**
**Department of Corrections, Washington, D.C.**

Yielded insight towards the inner workings of a state penitentiary system and parole & probation practices. Headed DOC committee to study system overcrowding and alternatives to confinement.

## PRESENTATIONS/TRAININGS

**Lecturer,** *New York City Criminal Bar Association*, CLE Webinar Series, "Understanding the Bureau Prisons: Incarceration-Related Considerations for New Federal Practitioners," New York, New York, August 20, 2020.

**Guest Speaker,** *Pennsylvania Association of Criminal Defense Lawyers*, White Collar Practice Seminar, "Preparing for Sentencing from the Presentence Investigation Interview to the Sentencing Hearing," Philadelphia, Pennsylvania, November 21, 2019.

**Guest Speaker,** *National Association of Criminal Defense Lawyers*, West Coast White Collar Conference, "Creative Post-Sentencing Strategies, Pardons & Other Requests for Leniency," Santa Monica, California, June 21, 2019.

**Guest Speaker,** *New York Federal Bar Council Committee on Sentencing*, "Navigating the Federal Bureau of Prisons", Sullivan & Cromwell LLP, New York, New York, February 28, 2018.

**Guest Speaker,** *New York State Bar Association Committee on While Collar Criminal Litigation*, "Federal Sentencing and Post-Conviction Strategies", Proskauer Rose LLP, New York, New York, June 29, 2010.

**Invited Participant,** *United States Sentencing Commission,* "Symposium on Alternatives to Incarceration," Washington, D.C., July 14-15, 2008.

**Lecturer,** *National Association of Criminal Defense Lawyers***,** "Defending the White Collar Case

–Federal Sentencing," with David Debold, Gibson, Dunn & Crutcher, Georgetown University School of Law, Washington, DC, September 27, 2007.

**Lecturer,** *National Legal Aid & Defender Association, National Alliance of Sentencing Advocates & Mitigation Specialists*, 2006 Death Penalty Mitigation Institute and Summer Conference, "Nuts & Bolts of Federal Prison Placements," Baltimore, Maryland, August 2, 2006.

**Faculty,** Criminal Justice Act Panel Training Program, "How to Navigate the Bureau of Prisons," United States Courthouse, Greenbelt, Maryland, December 16, 2005.

**Invited Speaker**, *New York Association of Criminal Defense Lawyers*, "Preparing Your Client for the Federal Bureau of Prisons," Annual CLE Seminar, New York, New York, December 6, 2001.

**Moderator,** *National Association of Sentencing Advocates*, "Working with the Press" and "Creative Writing Skills," Seventh Annual Conference, San Diego, California, April 12-15, 2000.

**Faculty,** Death Penalty Mitigation Institute, *National Association of Sentencing Advocates*, a grant project of the Bureau of Justice Assistance, San Diego, California, April 12-15, 2000.

**Faculty,** Death Penalty Mitigation Institute, *National Association of Sentencing Advocates,* a grant project of the Bureau of Justice Assistance, Miami, Florida, April 14-15, 1999.

**Invited Speaker**, *National Association of Sentencing Advocates,* "Back to Basics, Alternative Sentencing Planning," and "Advanced Report Writing," *Sixth Annual Conference,* Arlington, Virginia, April 16-18, 1998

**Instructor,** *Maryland HotSpot Communities Initiative,* Governor Parris N. Glendening, Cabinet Council on Criminal and Juvenile Justice, "Application of Client Specific Planning," Hagerstown, October 27, 1997; Salisbury, October 29, 1997; and Baltimore, Maryland, November 5, 1997.

**Invited Speaker**, *National Association of Sentencing Advocates,* "Making the Case with Writing Skills," and "Meeting the Federal Court Challenge, New Angles on the Guidelines," *Fifth Annual Conference,* San Francisco, California, May 1, 1997.

**Invited Speaker**, *Association of Criminal Defense Lawyers of New Jersey,* "How to Get Your Client an Alternative Sentence," *8th Annual Seminar,* East Brunswick, New Jersey, November 2, 1996.

**Trainer**, *National Legal Aid and Defender Association,* Washington, D.C. Trained public defender attorneys and social workers in sentencing advocacy, West Palm Beach, Florida; Fayetteville, North Carolina, 1981-1982.

## PUBLICATIONS

**Co-Author,** National Association of Criminal Defense Lawyers, "Bureau of Prisons Update: More Beds Less Rehabilitation," *The Champion*, March 2005.

**Contributor**, with Steven Vance, of chapter "Sentencing Alternatives in the Federal System," in Matthew Bender treatise, *Federal Sentencing for Business Crimes*, by Kirby D. Behre & A. Jeff Ifrah, Washington, D.C., 2002.

**Editor,** *The Sentencing Advocate,* Criminal Defense and Sentencing Resource Guide, NCIA, 1999-2003.

**Editor**, *NASA Notes,* Quarterly newsletter for the National Association of Sentencing Advocates, Washington, D.C., 1998-2003.

**Co-Author,** California Attorneys for Criminal Justice, "Federal Sentencing Guidelines: Must Reducing Disparity Mean Increasing Severity," with Vincent Schiraldi *The Forum,* Volume 14, No. 2, March-April 1987.

# MEDIA

**Appearance,** "Unraveled" film documentary directed & produced by Marc H. Simon, April 2012 release, Showtime and CNBC networks.

**Cited**, "Michael Cohen Choice of Prison: Well Known to Jewish Offenders," Corey Kilgannan, *New York Times*, January 22, 2019.

**Cited**, "Reality Winner Could Get Record-Setting Sentence in NSA Leak Case," Jeremy Redman, *Atlanta Journal Constitution,* August 22, 2018.

**Cited***, "Shkreli Pledges Honesty If He Gets A Break on Prison Time,"* Patricia Hurtado*, Bloomberg News,* February 18, 2018.

**Cited,** "Rajat Gupta To Finish Insider Trading Sentence at Home," Anita Raghaven, *New York Times*, January 20, 2016.

**Referenced**, "School for Scoundrels: Doing Time in Prison Prep School," Michael Rothfeld, *The Wall Street Journal*, March 26, 2012.

**Cited**, "No Place for Titans. Behind Bars, Fumo to Go From King to Serf", Jeff Gammage, *Philadelphia Inquirer*, August 30. 2009.

**Profiled,** "Pre-Prison Prep for White-Collar Criminals", Willow Duttge, Conde Nast Protfolio.com, http://www.portfolio.com/resources/business-intelligence/preparation_prep_for_whitecollar, May 11, 2007.

**Contributor**, "What's Left of Lay and Skilling Wealth Is at Risk", John R. Emshwiller & Gary McWilliams, *Wall Street Journal*, May 27, 2006.

**Contributor**, "For the Elite, Easing the Way to Prison." Alex Kuczynski, *New York Times*, December 9, 2001.

**Contributor**, "Alternatives to Jail Can be Hard Labor or Stroll in the Park," Robert F. Worth, *New York Times*, July 6, 2002.

**Panel Member,** American Bar Association Television Debate, "Bias in Sentencing," *Inside the Law* with Jack Ford, Chief Legal Correspondent, NBC News, Florida State University, Tallahassee, Florida, April 26, 1996.

# VOLUNTEER

*Fundraiser,* **Knights of Columbus, Edward Douglas White Council,** "Knights Assisting Virginia's Retarded," Arlington, Virginia, 1992-present.

*Joel A. Sickler*
*Page 5*

## EDUCATION

**1980**    **American University, Washington, D.C.**
Master of Science Administration of Justice
National Honor Society for Public Affairs and Administration

**1978**    **Saint Anselm College, Manchester, New Hampshire**
Bachelor of Science Criminal Justice Studies, *Magna Cum Laude*

## MEMBERSHIPS

*Associate Member*, **National Association of Criminal Defense Lawyers**, Washington, D.C. Member of Corrections Committee.

*Professional Member*, **National Alliance of Sentencing Advocates and Mitigation Specialists**, Washington, D.C. Served on Governing Board June 1997 – June 2001. Elected and served as Vice-President July 1998 – July 2000. Committee member: certification, newsletter, policy.

## CERTIFICATIONS

**Private Investigator:** State of California, Department of Consumer Affairs, Bureau of Collection and Investigative Services. Licensed in good standing since 1988 (PI 11941).