1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA,      :    19-CR-575(FB)
 4
              Plaintiff,            :
 5
                                         United States Courthouse
          -against-                :     Brooklyn, New York
 6
     ANDREW CAMPOS, VINCENT FIORE   :
 7   and MARK KOCAJ,                      January 15, 2021
                                         2:00 o'clock p.m.
 8           Defendants.            :

 9   - - - - - - - - - - - - - - - X

10                   TRANSCRIPT OF PLEADING
                 BEFORE THE HONORABLE ROANNE MANN
11                UNITED STATES MAGISTRATE JUDGE.

12   APPEARANCES:

13   For the Government:           SETH D. DuCHARME
                                   Acting United States Attorney
14                                 BY: KEITH D. EDELMAN
                                       KAYLA C. BENSING
15                                 Assistant United States Attorneys
                                   271 Cadman Plaza East
16                                 Brooklyn, New York

17
     For Defendant A. Campos:      HENRY E. MAZUREK, ESQ.
18                                 ILANA HARAMATI, ESQ.

19
     For Defendant V. Fiore:       LAWRENCE DiGIANSANTE, ESQ.
20

21   For Defendant M. Kocaj:       CHRISTOPHER BOOTH, ESQ.

22
     Court Reporter:               Charleane M. Heading
23                                 225 Cadman Plaza East
                                   Brooklyn, New York
24                                 (718) 613-2643
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

2

1          (All present by videoconference including the
2     defendants.)
3          THE CLERK:  Criminal cause for pleading.  Docket
4     number 2019-CR-575.  United States versus Andrew Campos,
5     Vincent Fiore and Mark Kocaj.
6          Counsel appearing by video please state your
7     appearances for the record and spell your last name for the
8     court reporter.
9          THE COURT:  And raise your hand.
10         MR. EDELMAN:  Good afternoon, Your Honor.  Keith
11     Edelman and Kayla Bensing for the government.  E-D-E-L-M-A-N
12     and B-E-N-S-I-N-G.
13         THE COURT:  Welcome.
14         MR. MAZUREK:  Good afternoon, Your Honor.  Henry
15     Mazurek and Ilana Haramati on behalf of Andrew Campos.  We are
16     all physically located in the same place so you should just
17     have one screen.
18         THE COURT:  All right.  And Mr. Campos is in the
19     middle?
20         MR. MAZUREK:  Yes, Your Honor.
21         THE COURT:  Okay.  Thank you.
22         MR. DiGIANSANTE:  Good afternoon, Your Honor.
23     Lawrence DiGiansante, D-I-G-I-A-N-S-A-N-T-E, and to my side is
24     Mr. Vincent Fiore.
25         THE COURT:  All right.  Welcome.

3

1          MR. BOOTH:  Hello, Your Honor.  I am Christopher

2     Booth appearing with my client, Mark Kocaj, who is seated

3     beside me.

4          THE COURT:  Okay.  Welcome to everyone.  I hope

5     everyone is safe and healthy.

6          First, let's have the oath administered to each of

7     the three defendants.

8          THE CLERK:  Will the defendants please raise their

9     right hands.

10          (The defendants were sworn by the clerk.)

11          THE CLERK:  Thank you.

12          Could you all state your name and spell your last

13     name for the court reporter starting with Mr. Campos.

14          DEFENDANT A. CAMPOS:  Andrew Campos, C-A-M-P-O-S.

15          THE CLERK:  Mr. Fiore?

16          DEFENDANT FIORE:  Vincent Fiore, F-I-O-R-E.

17          THE CLERK:  And Mr. Kocaj?

18          DEFENDANT KOCAJ:  Mark Kocaj, K-O-C-A-J.

19          THE COURT:  All right.  All three of you should

20     understand that having been sworn, your answers to my

21     questions will be subject to the penalties of perjury if you

22     do not answer truthfully.

23          Do you understand that, Mr. Campos?

24          Mr. Campos?  You must be on mute.

25          DEFENDANT A. CAMPOS:  Yes, Your Honor.

4

1          THE COURT:  Do you understand that, Mr. Fiore?

2          DEFENDANT FIORE:  Yes, Your Honor.

3          THE COURT:  Do you understand that, Mr. Kocaj?

4          DEFENDANT KOCAJ:  Yes, Your Honor.

5          THE COURT:  All right.  At this point, I would like

6    to note for the record that we are proceeding by

7    videoconference on account of the pandemic.  The courthouse

8    has been closed to in-person appearances through March 1st

9    because of the health concerns.  I want to make sure that each

10   of the defendants agrees to proceed by way of videoconference

11   as opposed to waiting until the courthouse reopens for an

12   in-person proceeding.

13          First of all, do you pronounce it "Mazurek"?

14          MR. MAZUREK:  Yes.

15          THE COURT:  Have you discussed the matter proceeding

16   remotely with Mr. Campos?

17          MR. MAZUREK:  I have, Your Honor.  I've reviewed it

18   with him and he agrees to proceed by video.

19          THE COURT:  All right.  Mr. Campos, do you agree to

20   proceed remotely rather than waiting until the courthouse

21   reopens?

22          DEFENDANT A. CAMPOS:  Yes, Your Honor.

23          THE COURT:  And Mr. DiGiansante, have you discussed

24   the matter of proceeding remotely with Mr. Fiore?

25          MR. DiGIANSANTE:  I have, Your Honor.

5

1          THE COURT:  And does he consent?

2          MR. DiGIANSANTE:  Yes, he does.

3          THE COURT:  Mr. Fiore, do you consent to proceeding

4    by way of videoconference today?

5          DEFENDANT FIORE:  Yes, Your Honor.

6          THE COURT:  Are you making this decision voluntarily

7    and of your own free will?

8          DEFENDANT FIORE:  I am.

9          THE COURT:  And I neglected to ask you that,

10   Mr. Campos.  Are you making the decision to proceed remotely

11   voluntarily and of your own free will?

12         DEFENDANT A. CAMPOS:  Yes, Your Honor.

13         THE COURT:  Lastly, Mr. Booth, have you discussed

14   the matter of proceeding remotely with your client?

15         MR. BOOTH:  Yes, I have, Your Honor, and he consents

16   to proceeding.

17         THE COURT:  Mr. Kocaj, do you consent to proceed by

18   videoconference?

19         DEFENDANT KOCAJ:  Yes, Your Honor.

20         THE COURT:  Are you making this decision voluntarily

21   and of your own free will?

22         DEFENDANT KOCAJ:  Yes, Your Honor.

23         THE COURT:  I find that the consent of each of the

24   three defendants is knowing and intelligent and voluntary and

25   further, that it is in the interest of justice to proceed

6

1   today remotely.

2           I have before me three consent forms relating to

3   having the plea taken before a United States Magistrate Judge.

4           Addressing Mr. Campos' consent first, Mr. Mazurek,

5   did you discuss this consent form with your client?

6           MR. MAZUREK:  I have, Your Honor, and it's my

7   opinion that he understood it and voluntarily agrees to

8   proceed by Magistrate as opposed to the District Court Judge.

9           THE COURT:  And Mr. Campos, do you consent to

10  proceeding before me today rather than waiting for

11  Judge Block, the District Court Judge, to preside at this

12  proceeding?

13          DEFENDANT A. CAMPOS:  Yes, Your Honor.

14          THE COURT:  And have you signed the written consent

15  form?

16          DEFENDANT A. CAMPOS:  Yes, Your Honor.

17          THE COURT:  Are you making this decision voluntarily

18  and of your own free will?

19          DEFENDANT A. CAMPOS:  Yes, Your Honor.

20          THE COURT:  Mr. Fiore, turning to your form now, let

21  me first ask counsel, Mr. DiGiansante, have you discussed the

22  matter consenting with your client?

23          MR. DiGIANSANTE:  I have, Your Honor.  Mr. Fiore

24  consents to proceed by Magistrate.

25          THE COURT:  Mr. Fiore, do you, in fact, consent to

7

1   proceed before me at this time?

2          DEFENDANT FIORE:  Yes, Your Honor.

3          THE COURT:  And have you signed the consent form?

4          DEFENDANT FIORE:  Yes, Your Honor.

5          THE COURT:  And lastly, with respect to Mr. Kocaj,

6   Mr. Booth, have you discussed the matter of proceeding before

7   a Magistrate Judge with your client?

8          MR. BOOTH:  I have, Your Honor, and he wishes to

9   proceed before you, the Magistrate.

10         THE COURT:  Mr. Kocaj, do you, in fact, consent to

11  proceed before me?

12         DEFENDANT KOCAJ:  Yes, Your Honor.

13         THE COURT:  And have you signed the consent form?

14         DEFENDANT KOCAJ:  Yes, Your Honor.

15         THE COURT:  I want to make sure that all three of

16  you do understand what it is you are agreeing to by signing

17  the consent form.

18         This is Judge Block's case.  He is a United States

19  District Court Judge.  He's the judge who will sentence you

20  and will make the ultimate decision as to whether to accept

21  your guilty plea.  If you wish, you have the absolute right to

22  have Judge Block listen to your plea and if you choose to do

23  that, there will be no prejudice or harm to you.

24         Do you understand that, Mr. Campos?

25         DEFENDANT A. CAMPOS:  Yes, Your Honor.

8

1          THE COURT:  Do you understand that, Mr. Fiore?

2          DEFENDANT FIORE:  Yes, Your Honor.

3          THE COURT:  Do you understand that, Mr. Kocaj?

4          DEFENDANT KOCAJ:  Yes, Your Honor.

5          THE COURT:  And am I pronouncing your name

6    correctly?

7          DEFENDANT KOCAJ:  Yes, Your Honor.

8          THE COURT:  All right.  Thank you.

9          Addressing the three of you again, if you wish, I

10   will listen to your plea.  I am a United States Magistrate

11   Judge.  The court reporter will make a transcript of the

12   proceeding and Judge Block will review it to decide whether to

13   accept your plea.  He will also review it in connection with

14   your sentence.

15          Do you understand that, Mr. Campos?

16          DEFENDANT A. CAMPOS:  Yes, Your Honor.

17          THE COURT:  Do you understand that, Mr. Fiore?

18          DEFENDANT FIORE:  Yes, Your Honor.

19          THE COURT:  Do you understand that, Mr. Kocaj?

20          DEFENDANT KOCAJ:  Yes, Your Honor.

21          THE COURT:  Understanding what I have just said, do

22   you still wish to give up your right to have Judge Block

23   listen to your plea and are you prepared to proceed before me

24   at this time?

25          Mr. Campos?

9

1        DEFENDANT A. CAMPOS:  Yes, Your Honor.

2        THE COURT:  Mr. Fiore?

3        DEFENDANT FIORE:  Yes, Your Honor.

4        THE COURT:  Mr. Kocaj?

5        DEFENDANT KOCAJ:  Yes, Your Honor.

6        THE COURT:  Have any threats or promises been made

7   to you to get you to agree to have me hear your plea?

8        Mr. Campos?

9        DEFENDANT A. CAMPOS:  No, Your Honor.

10        THE COURT:  Mr. Fiore?

11        DEFENDANT FIORE:  No, Your Honor.

12        THE COURT:  Mr. Kocaj?

13        DEFENDANT KOCAJ:  No, Your Honor.

14        THE COURT:  I find that the consent of all three

15   defendants is knowing, intelligent and voluntary.  Therefore,

16   I am prepared to proceed.

17        As a preliminary matter, and consistent with what I

18   have been doing at all the other plea proceedings in this

19   case, I am going to begin by putting on the record an oral

20   order pursuant to revised Rule 5(f) since this is the first

21   appearance of each of these defendants since that rule was

22   revised.  I have gone through it at all the prior proceedings.

23   There is a longer order that has been docketed into the court

24   file but since this is the initial appearance of each of these

25   defendants since the revision, under the rule, I am going to

1  make this statement on the record.

2        I direct the government to comply with its

3  obligations under Brady versus Maryland and its progeny to

4  disclose to the defense all information, whether admissible or

5  not, that is favorable to the defendant, that is material

6  either to guilt or to punishment and known to the prosecution.

7  I have already entered a written order more fully describing

8  this obligation as well as the possible consequences of

9  failing to meet it and I direct the prosecution to review and

10  comply with that order.

11        Mr. Edelman, does the government confirm that it

12  understands its obligations and that it has fulfilled and will

13  continue to fulfill them?

14        MR. EDELMAN:  Yes, Your Honor.

15        THE COURT:  All right.  Addressing the three

16  defendants again, before accepting your guilty plea, there are

17  a number of questions I have to ask each of you to make sure

18  that yours is a valid plea.  If you do not understand any of

19  my questions, please say so and I will reword the question.

20        I'm going to start with Mr. Campos.

21        How old are you, sir?

22        DEFENDANT A. CAMPOS:  Fifty-one.

23        THE COURT:  How far did you go in school?

24        DEFENDANT A. CAMPOS:  High school.

25        THE COURT:  Have you had any difficulty

11

1    communicating with your attorney?

2         DEFENDANT A. CAMPOS:  No.

3         THE COURT:  Are you now or have you recently been

4    under the care of a doctor or psychiatrist?

5         DEFENDANT A. CAMPOS:  No, Your Honor.

6         THE COURT:  In the past 24 hours, have you taken any

7    drugs, narcotics, medicine or pills or drunk any alcoholic

8    beverages?

9         DEFENDANT A. CAMPOS:  No, Your Honor.

10        THE COURT:  Have you ever been hospitalized or

11   treated for substance abuse or for any mental or emotional

12   problem?

13        DEFENDANT A. CAMPOS:  No, Your Honor.

14        THE COURT:  Is your mind clear now?

15        DEFENDANT A. CAMPOS:  Yes, Your Honor.

16        THE COURT:  Do you understand what's going on here

17   now?

18        DEFENDANT A. CAMPOS:  Yes, Your Honor.

19        THE COURT:  Mr. Fiore, how old are you?

20        DEFENDANT FIORE:  Fifty-eight.

21        THE COURT:  How far did you go in school?

22        DEFENDANT FIORE:  College, four years.

23        THE COURT:  Have you had any difficulty

24   communicating with your attorney?

25        DEFENDANT FIORE:  No, no, Your Honor.

12

1          THE COURT:  Are you now or have you recently been

2     under the care of a physician or psychiatrist?

3          DEFENDANT FIORE:  No, Your Honor.

4          THE COURT:  In the past 24 hours, have you taken any

5     drugs, narcotics, medicine or pills or drunk any alcoholic

6     beverages?

7          DEFENDANT FIORE:  No, Your Honor.

8          THE COURT:  Have you ever been hospitalized or

9     treated for substance abuse or for any mental or emotional

10    problem?

11         DEFENDANT FIORE:  No, Your Honor.

12         THE COURT:  Is your mind clear now?

13         DEFENDANT FIORE:  Yes, Your Honor.

14         THE COURT:  Do you understand what's going on here

15    now?

16         DEFENDANT FIORE:  Yes, Your Honor.

17         THE COURT:  Addressing the three defense attorneys,

18    have you discussed the matter of pleading guilty with your

19    client?

20         Mr. Mazurek?

21         MR. MAZUREK:  Yes, Your Honor.

22         THE COURT:  Mr. Booth?

23         MR. BOOTH:  Yes, I have, Your Honor.

24         Were you going to ask Mr. Kocaj the same questions

25    you just asked Mr. Campos and Mr. Fiore?

13

```
 1              THE COURT:  I was.  I have been doing this too often
 2    this week so that I'm on automatic pilot and I thank you for
 3    reminding me.
 4              Yes, Mr. Kocaj, how old are you?
 5              DEFENDANT KOCAJ:  Fifty, Your Honor.
 6              THE COURT:  How far did you go in school?
 7              DEFENDANT KOCAJ:  High school, Your Honor.
 8              THE COURT:  Have you had any difficulty
 9    communicating with your attorney?
10              DEFENDANT KOCAJ:  No, Your Honor.
11              THE COURT:  Are you now or have you recently been
12    under the care of a physician or psychiatrist?
13              DEFENDANT KOCAJ:  No, Your Honor.
14              THE COURT:  In the past 24 hours, have you taken any
15    narcotics, drugs, medicine or pills or drunk any alcoholic
16    beverages?
17              DEFENDANT KOCAJ:  No, Your Honor.
18              THE COURT:  Have you ever been hospitalized or
19    treated for substance abuse or for any mental or emotional
20    problem?
21              DEFENDANT KOCAJ:  No, Your Honor.
22              THE COURT:  Is your mind clear now?
23              DEFENDANT KOCAJ:  Yes, Your Honor.
24              THE COURT:  Do you understand what's going on here
25    now?
```

14

1          DEFENDANT KOCAJ:  Yes, Your Honor.

2          THE COURT:  All right.  Mr. Booth, again, thank you

3     for backing me up there.  Have you discussed the matter of

4     pleading guilty with your client?

5          MR. BOOTH:  Yes, Your Honor, we have done it

6     thoroughly and on many occasions.

7          THE COURT:  And Mr. DiGiansante, have you had a

8     similar discussion or discussions with Mr. Fiore?

9          MR. DiGIANSANTE:  I have, Your Honor.

10          THE COURT:  Counsel, in your view, does your client

11     understand the rights he will be waiving by pleading guilty?

12          Mr. Mazurek?

13          MR. MAZUREK:  Yes, that is my view, Your Honor.

14          THE COURT:  Mr. DiGiansante?

15          MR. DiGIANSANTE:  He does, Your Honor.

16          THE COURT:  Mr. Booth?

17          MR. BOOTH:  Yes, he does, Judge.

18          THE COURT:  Is your client capable of understanding

19     the nature of these proceedings?

20          Mr. Mazurek?

21          MR. MAZUREK:  Yes.

22          THE COURT:  Mr. DiGiansante?

23          MR. DiGIANSANTE:  Yes, Your Honor.

24          THE COURT:  Mr. Booth?

25          MR. BOOTH:  Yes.

15

1          THE COURT:  Do you have any doubt as to your

2     client's competence to plead at this time?

3          Mr. Mazurek?

4          MR. MAZUREK:  I have no doubt, Your Honor.

5          THE COURT:  Mr. DiGiansante?

6          MR. DiGIANSANTE:  I have no doubts, Your Honor.

7          THE COURT:  Mr. Booth?

8          MR. BOOTH:  No doubts, Judge.

9          THE COURT:  Have you advised your client of the

10    maximum sentence and fine that can be imposed and have you

11    discussed with him the effect of the sentencing guidelines?

12         MR. MAZUREK:  This is Mr. Mazurek, Your Honor, yes,

13    I have.

14         THE COURT:  Yes, Mr. Mazurek.

15         How about you, Mr. DiGiansante?

16         MR. DiGIANSANTE:  I have, Your Honor.

17         THE COURT:  Mr. Booth?

18         MR. BOOTH:  Yes, Your Honor.

19         THE COURT:  Addressing the three defendants again,

20    have you had an opportunity to discuss your case with your

21    counsel and are you satisfied to have him represent you?

22         Mr. Campos?

23         DEFENDANT A. CAMPOS:  Yes, Your Honor.

24         THE COURT:  Mr. Fiore?

25         DEFENDANT FIORE:  Yes, Your Honor.

16

1          THE COURT:  Mr. Kocaj?

2          DEFENDANT KOCAJ:  Yes, Your Honor.

3          THE COURT:  Have you seen a copy of the indictment

4   that has been filed against you?

5          Mr. Campos?

6          DEFENDANT A. CAMPOS:  Yes, Your Honor.

7          THE COURT:  Mr. Fiore?

8          DEFENDANT FIORE:  Yes, Your Honor.

9          THE COURT:  Mr. Kocaj?

10          DEFENDANT KOCAJ:  Yes, Your Honor.

11          THE COURT:  Have you consulted with your attorney

12   about the indictment?

13          Mr. Campos?

14          DEFENDANT A. CAMPOS:  Yes, Your Honor.

15          THE COURT:  Mr. Fiore?

16          DEFENDANT FIORE:  Yes, Your Honor.

17          THE COURT:  Mr. Kocaj?

18          DEFENDANT KOCAJ:  Yes, Your Honor.

19          THE COURT:  I'm now going to review with you the

20   charges that I understand you are prepared to plead guilty to

21   as well as what the government would have to prove to

22   establish your guilt on that charge and because there are a

23   number of different counts to which you're pleading guilty at

24   least collectively, there are also a number of predicate acts

25   that I understand you are going to be pleading guilty to, it

1    is going to be a rather lengthy discussion and if I happen to

2    lose the thread at any point, I certainly encourage counsel to

3    jump in and remind me if I've missed anything or if I've

4    misstated anything.

5            Mr. Campos and Mr. Fiore, I understand that the two

6    of you are prepared to plead guilty to Count One of the

7    indictment which is a racketeering charge and you've agreed to

8    plead to some of the same racketeering acts but some different

9    ones.

10           MR. EDELMAN:  Your Honor, I apologize for

11   interrupting but just to be clear, it's just a racketeering

12   conspiracy charge, Count One.

13           THE COURT:  Well, I was going to go into the

14   specifics of it but, yes, a racketeering conspiracy charge.

15           MR. EDELMAN:  Thank you.

16           THE COURT:  Count One more specifically alleges that

17   between approximately February of 2013 and the filing of the

18   indictment in December of 2019, the two of you, Mr. Campos and

19   Mr. Fiore, as well as others, knowingly conspired or agreed to

20   conduct and participate directly and indirectly in the conduct

21   of affairs of an enterprise that was engaged in and the

22   activities of which affected interstate commerce through a

23   pattern of racketeering activity as specified in that act.

24           I am going to explain in general what the government

25   would have to prove in order to establish guilt of a

18

1   racketeering conspiracy.  Then I will go through each of the

2   racketeering acts that I understand you are prepared to plead

3   guilty to to describe what the government would have to prove

4   to establish your guilt on that racketeering act.

5          First of all, a conspiracy is an agreement between

6   two or more individuals to violate the law.  The government

7   would have to prove that sometime during the approximate time

8   period alleged in Count One, you knowingly and intentionally

9   became a member of that conspiracy or agreement to violate the

10  law knowing of the illegal object or objects of that

11  agreement.

12         In order to prove the underlying racketeering

13  offense which was the object or purpose of the conspiracy, the

14  government would have to prove the following beyond a

15  reasonable doubt.

16         First, the existence of an enterprise which simply

17  is a union or group of individuals associated in fact even if

18  not a legal entity.  Second, the government would have to

19  prove that the enterprise that was the object of that

20  conspiracy was engaged in or its activities affected or would

21  affect interstate or foreign commerce.  Third, the government

22  would have to prove that you were or were to be employed by or

23  associated with that enterprise.  Fourth, the government would

24  have to prove that you did or would conduct or participate

25  either directly or indirectly in the conduct of the affairs of

19

1  the enterprise.  And, fifth, the government would have to

2  prove that you knowingly agreed that you or a co-conspirator

3  would participate in the conduct of the affairs of the

4  enterprise through a pattern of racketeering activity as

5  described in the indictment.  That is, that you agreed that

6  you or a co-conspirator would commit at least two acts of

7  racketeering activity alleged in the indictment.

8           Let me just make sure that you understand what I

9  have said so far.

10          Mr. Campos?

11          DEFENDANT A. CAMPOS:  Yes, Your Honor.

12          THE COURT:  Mr. Fiore?

13          DEFENDANT FIORE:  Yes, Your Honor.

14          THE COURT:  I understand that both Mr. Campos and

15  Mr. Fiore have agreed to plead guilty to Racketeering Act 5 of

16  the indictment.

17          Racketeering Act 5 charges a wire fraud scheme

18  involving payroll tax violations.  More specifically,

19  Racketeering Act 5 alleges that between June of 2014 and

20  December of 2019, the two of you and others knowingly and

21  intentionally devised a scheme and artifice to defraud the IRS

22  by means of materially false representations, specifically

23  false and fraudulent Form 941 and Form 1120S tax returns for

24  an entity called CWC, and that in connection with executing

25  that scheme, knew, caused to be transmitted interstate

1   e-mails.

2          In order to prove you guilty of that offense, the

3   government would have to prove the following beyond a

4   reasonable doubt.

5          First, that during the approximate time period

6   alleged in Racketeering Act 5, you knowingly devised or

7   participated in a scheme or artifice to defraud the Internal

8   Revenue Service of money or property by false and fraudulent

9   pretenses, representations or omissions.  Second, that you did

10  so knowingly and with the intent to defraud.  Third, that the

11  misrepresentation or omission was material.  And, fourth, the

12  use of interstate e-mails.

13         Do you understand that racketeering charge, that

14  racketeering act that's alleged in the indictment?

15         Mr. Campos?

16         DEFENDANT A. CAMPOS:  Yes, Your Honor.

17         THE COURT:  Mr. Fiore?

18         DEFENDANT FIORE:  Yes, Your Honor.

19         MR. MAZUREK:  Your Honor, Mr. Mazurek.  Just briefly

20  before you turn to the next racketeering act, if it may assist

21  the Court, Mr. Campos intends to allocute to violations of sub

22  part C of both Racketeering Act 7 and 10, the violation of

23  Section 1957 of Title 18, if that assists the Court.

24         THE COURT:  Okay.  Well, I don't have it open in

25  front of me yet.  I've got so many different papers here and

1    when I actually turn to that page, I may need your assistance

2    again.  That's in connection with the money laundering?

3              MR. MAZUREK:  That's correct, yes.

4              THE COURT:  One moment.

5              MR. MAZUREK:  I'm referring to paragraph 47 on

6    page 20.

7              THE COURT:  Right.  I just wanted to make sure.

8    Mr. Fiore -- maybe since I just did wire fraud, before I

9    circle back to Mr. Campos, I am going to go over the other

10   wire fraud racketeering charge.  Actually, no, no, that's

11   racketeering act 7 -- sorry -- 13, Mr. Fiore is going to be

12   pleading guilty to Racketeering Act 13 which is another wire

13   fraud scheme so let me take care of that first and then I will

14   address the money laundering racketeering acts.

15             Mr. Fiore, I understand that you're also prepared to

16   plead guilty to Racketeering Act 13 which charges a different

17   wire fraud scheme in connection with an entity that is

18   referred to as Construction Company Number 2.

19             More specifically, that racketeering act alleges

20   that between approximately December of 2018 and June of 2019,

21   you and others knowingly and intentionally devised a scheme

22   and artifice to defraud Construction Company Number 2,

23   including to deprive that company of its right to honest

24   services as well as to obtain money and property from that

25   company, by means of materially false and fraudulent

1  representations and that in connection with executing that

2  scheme, you caused interstate e-mails to be sent.

3      In order to prove you guilty of that offense, the

4  government would have to prove the same elements that I just

5  described to you except that, just briefly, that you devised

6  or participated in a scheme or artifice to defraud that

7  company and that you did so knowingly and with intent to

8  defraud.  In addition, the government could satisfy the first

9  element by establishing that you knowingly devised or

10  participated in a scheme or artifice to deprive that company

11  of its right to the honest services of its employees.  The

12  government again would have to show that the misrepresentation

13  was material and that interstate e-mails were used.

14      Mr. Fiore, do you understand that racketeering act?

15      DEFENDANT FIORE:  Yes, Your Honor.

16      THE COURT:  All right.  Both Mr. Campos and

17  Mr. Fiore, I understand, are prepared to plead guilty to

18  racketeering acts involving money laundering.  Mr. Campos is

19  going to be pleading guilty to Racketeering Act 7 and 10.

20  Mr. Fiore is going to be pleading guilty to Racketeering Act

21  7.

22      Now, Mr. Mazurek, you said your client was going to

23  be pleading to B and C, if I recall correctly?

24      MR. MAZUREK:  C, Your Honor, the Section 1957

25  offense.

23

1          THE COURT:  All right.  Just C, did you say?

2          MR. MAZUREK:  Yes, that's correct.

3          THE COURT:  And which subdivisions will Mr. Fiore be

4   pleading to?

5          MR. EDELMAN:  Your Honor, I believe it's the same

6   subsection, C, for both defendants.

7          THE COURT:  All right.  So I don't need to go

8   through A and B?

9          MR. EDELMAN:  A, B and C are sub predicates, any one

10  of which would satisfy the predicate act so I don't believe

11  Your Honor needs to.

12         THE COURT:  All right.  That's what I was asking.

13         All right.  Let me just briefly summarize what is

14  alleged in Racketeering Act 7, sub C.  That alleges that

15  between approximately October of 2014 and June of 2019, the

16  two of you and others knowingly and intentionally engaged and

17  attempted to engage in one or more monetary transactions

18  affecting commerce and criminally derived property of a value

19  greater than $10,000 that was derived from specified unlawful

20  activity, specifically, wire fraud.

21         In order to prove you guilty of that offense, the

22  government would have to prove the following beyond a

23  reasonable doubt:  First, that you engaged in monetary

24  transactions in and affecting commerce at some time during the

25  period alleged in the complaint; second, that the financial

24

1  transactions were of a value greater than $10,000; and, third,

2  that the financial transactions were of property derived from

3  specified unlawful activity, specifically, wire fraud.

4          Do you understand that charge, Mr. Campos?

5          DEFENDANT A. CAMPOS:  Yes, Your Honor.

6          THE COURT:  Do you understand that charge,

7  Mr. Fiore?

8          DEFENDANT FIORE:  Yes, Your Honor.

9          THE COURT:  And I understand that Mr. Campos is

10  prepared to plead guilty to Racketeering Act 10 which is

11  another money laundering charge.  Which subsection do we need

12  to address on that one?

13          MR. MAZUREK:  Your Honor, this is Mr. Mazurek.

14  Subsection C again for predicate act 10.

15          THE COURT:  Mr. Edelman, does the government concur?

16          MR. EDELMAN:  That's my understanding and that's

17  sufficient, Your Honor.

18          THE COURT:  All right.

19          Mr. Campos, that Racketeering Act, subsection C,

20  alleges that between approximately March of 2018 and March of

21  2019, you and others knowingly and intentionally engaged and

22  attempted to engage in monetary transactions affecting

23  commerce in criminally derived property of a value of $10,000

24  that was derived from specified unlawful activities,

25  specifically, wire fraud, and this claim has the same elements

25

1    as the last money laundering charge that I explained to you.

2              Do you understand that, Mr. Campos?

3              DEFENDANT A. CAMPOS:  Yes, Your Honor.

4              THE COURT:  I don't recall.  I did review

5    Racketeering Act 13 with Mr. Fiore, correct?

6              MR. DiGIANSANTE:  Yes, Your Honor.

7              THE COURT:  All right.  And I understand that

8    Mr. Fiore is also prepared to plead guilty to Racketeering

9    Act 16.

10             That racketeering act also has a sub A and sub B.

11   Are we going to be focusing on one rather than the other?

12             MR. EDELMAN:  It's my understanding it's going to be

13   A, the obstruction of justice conspiracy.

14             THE COURT:  All right.

15             MR. DiGIANSANTE:  That's correct, Your Honor.

16             THE COURT:  Mr. Fiore, let me briefly review with

17   you what that subsection of Racketeering Act 16 charges.  It

18   alleges that in approximately November of 2019, you and others

19   knowingly and intentionally conspired or agreed to corruptly

20   obstruct, influence and impede an official proceeding,

21   specifically a federal grand jury investigation in the Eastern

22   District of New York.

23             In order to prove you guilty of that offense, the

24   government would have to prove the following beyond a

25   reasonable doubt.

1          First, that you knowingly and intentionally agreed

2    with others to violate the law at some point in November of

3    2019.  Second, the government would have to prove that the

4    object or purpose of that conspiracy was to obstruct a federal

5    grand jury investigation in the Eastern District of New York.

6    To prove the obstruction, the government would have to show

7    that you obstructed, influenced or impeded that federal grand

8    jury investigation.  Additionally, the government would have

9    to show that you acted corruptly which means to act with an

10   improper purpose and engaged in conduct knowingly and

11   dishonestly and with the intent to obstruct, impede or

12   influence the grand jury proceeding.

13          Mr. Fiore, do you understand that charge?

14          DEFENDANT FIORE:  Yes, Your Honor.

15          THE COURT:  I think I have covered all the charges

16   to which Mr. Campos and Mr. Fiore are planning to plead

17   guilty.  Is that correct?  Then I'll move on to Mr. Kocaj.

18          MR. MAZUREK:  Yes, for Mr. Campos.

19          MR. EDELMAN:  Yes, Your Honor.

20          THE COURT:  Mr. Kocaj, I understand that you are

21   prepared to plead guilty to Count 16 of the indictment.  That

22   count charges a wire fraud conspiracy in connection with an

23   entity that is referred to as Construction Company Number 1.

24          In substance, that count alleges that between

25   approximately June of 2018 and June of 2019, you and others

27

1  knowingly and intentionally conspired or agreed to devise a

2  scheme and artifice to defraud Construction Company Number 1

3  of its right to honor services and to obtain money and

4  property from that company by means of materially false

5  representations and that in connection with that scheme to

6  defraud, you caused interstate e-mails and text messages to be

7  sent.

8       In order to prove you guilty of that offense, the

9  government would have to prove the following beyond a

10 reasonable doubt.  First, that a conspiracy or agreement to

11 violate the law existed and that you knowingly and

12 intentionally became a member of that conspiracy at some point

13 during the time period alleged in the indictment and that you

14 knew the illegal purpose or object of that conspiracy.

15      In order to prove that object, the government would

16 have to prove that you knowingly devised or participated in a

17 scheme or artifice to defraud Construction Company Number 1 of

18 its right to honest services or to obtain money or property

19 from the company by means of materially false representations.

20 The government would have to prove that you acted knowingly

21 and with the intent to defraud.  The government would further

22 have to prove that the misrepresentation was material and,

23 finally, the government would have to prove the use of

24 interstate e-mails and text messages as part of the scheme to

25 defraud.

28

1          Do you understand that charge?

2          MR. BOOTH:  Your Honor, if I just may say, the

3    Count 16 charges in the alternative, honest services versus

4    the schemes of the fraud of property.  So in order to find the

5    defendant guilty of it, the government does not necessarily

6    have to prove the taking of, depriving the right of honest

7    services.

8          MR. EDELMAN:  Your Honor, I think, if I may, I

9    believe the property has to be the object of the scheme to

10   defraud and one form of property is honest services.

11   Obviously, other forms of property such as money would also

12   suffice.

13         THE COURT:  Well, I thought I had, I thought I had

14   said either -- well, I said including the right to deprive the

15   company of its right to honest services.  I don't know whether

16   we need to get into this in great detail.  It depends on how

17   Mr. Kocaj is going to be allocuting.

18         Do you anticipate that there's going to be an issue?

19         MR. BOOTH:  Well, Your Honor, he will not be

20   allocuting to honest services.  It's the scheme to defraud of

21   property and money.

22         THE COURT:  All right.  And he does not need to

23   address honest services in any way?

24         MR. BOOTH:  Correct.

25         MR. EDELMAN:  And I think that's correct,

1  Your Honor, legally, it is legally sufficient, but it's no
2  secret the government's view is that the scheme included the
3  right to deprive honest services.

4  THE COURT:  All right.  Well, it sounds as if that
5  isn't going to be an issue that the court needs to address,
6  but when we get to his allocution, if something comes up, we
7  can address it at that point.

8  I now want to talk with the three defendants about
9  the rights they will be giving up by pleading guilty but the
10  most, the first and most important thing you have to
11  understand is that you have an absolute right to plead not
12  guilty even if you are guilty.

13  Do you understand that, Mr. Campos?

14  DEFENDANT A. CAMPOS:  Yes, Your Honor.

15  THE COURT:  Do you understand that, Mr. Fiore?

16  DEFENDANT FIORE:  Yes, Your Honor.

17  THE COURT:  Do you understand that, Mr. Kocaj?

18  DEFENDANT KOCAJ:  Yes, Your Honor.

19  THE COURT:  If you plead not guilty, then under the
20  constitution and laws of the United States, you are entitled
21  to a speedy trial by jury with the assistance of counsel on
22  the charges contained in the indictment against you.

23  Do you understand that, Mr. Campos?

24  DEFENDANT A. CAMPOS:  Yes, Your Honor.

25  THE COURT:  Do you understand that, Mr. Fiore?

30

1          DEFENDANT FIORE:  Yes, Your Honor.

2          THE COURT:  Do you understand that, Mr. Kocaj?

3          DEFENDANT KOCAJ:  Yes, Your Honor.

4          THE COURT:  You have the right to be represented by

5    an attorney at every stage of the proceeding including a trial

6    and if you cannot afford counsel, you have the right to have

7    the court appoint an attorney to represent you at no charge to

8    you.

9          Do you understand that, Mr. Campos?

10         DEFENDANT A. CAMPOS:  Yes, Your Honor.

11         THE COURT:  Do you understand that, Mr. Fiore?

12         DEFENDANT FIORE:  Yes, Your Honor.

13         THE COURT:  Do you understand that, Mr. Kocaj?

14         DEFENDANT KOCAJ:  Yes, Your Honor.

15         THE COURT:  At the trial, you would be presumed to

16   be innocent and the government would have to overcome that

17   presumption and prove you guilty by competent evidence and

18   beyond a reasonable doubt.  You would not have to prove that

19   you were innocent.  If the government failed to prove you

20   guilty beyond a reasonable doubt, the jury would have the duty

21   to find you not guilty.

22         Do you understand that, Mr. Campos?

23         DEFENDANT A. CAMPOS:  Yes, Your Honor.

24         THE COURT:  Do you understand that, Mr. Fiore?

25         DEFENDANT FIORE:  Yes, Your Honor.

31

1          THE COURT:  Do you understand that, Mr. Kocaj?

2          DEFENDANT KOCAJ:  Yes, Your Honor.

3          THE COURT:  In the course of the trial, the

4   witnesses for the government would have to come to court and

5   testify in your presence and your attorney would have a right

6   to cross-examine the witnesses for the government, to object

7   to evidence offered by the government, to offer evidence on

8   your behalf and to compel the attendance of witnesses.

9          Do you understand that, Mr. Campos?

10         DEFENDANT A. CAMPOS:  Yes, Your Honor.

11         THE COURT:  Do you understand that, Mr. Fiore?

12         DEFENDANT FIORE:  Yes, Your Honor.

13         THE COURT:  Do you understand that, Mr. Kocaj?

14         DEFENDANT KOCAJ:  Yes, Your Honor.

15         THE COURT:  At a trial, while you would have the

16  right to testify if you chose to do so, you could not be

17  required to testify.  Under the constitution of the United

18  States, a defendant in a criminal case cannot be compelled to

19  incriminate himself.  If you decided not to testify, the court

20  would, at your lawyer's request, instruct the jurors that they

21  could not hold that against you.

22         Do you understand that, Mr. Campos?

23         DEFENDANT A. CAMPOS:  Yes, Your Honor.

24         THE COURT:  Do you understand that, Mr. Fiore?

25         DEFENDANT FIORE:  Yes, Your Honor.

32

1          THE COURT:  Do you understand that, Mr. Kocaj?

2          DEFENDANT KOCAJ:  Yes, Your Honor.

3          THE COURT:  If you plead guilty and the court

4  accepts your plea, you will be giving up your constitutional

5  right to a trial and the other rights that I have just

6  discussed.  There will be no further trial of any kind and no

7  right of an appeal from the judgment of guilty.  Judge Block

8  will simply enter a judgment of guilty on the basis of your

9  guilty plea.

10          Do you understand that, Mr. Campos?

11          DEFENDANT CAMPOS:  Yes, Your Honor.

12          THE COURT:  Do you understand that, Mr. Fiore?

13          DEFENDANT FIORE:  Yes, Your Honor.

14          THE COURT:  Do you understand that, Mr. Kocaj?

15          DEFENDANT KOCAJ:  Yes, Your Honor.

16          THE COURT:  If you plead guilty, I will have to ask

17  you questions about what you did in order to satisfy myself

18  and Judge Block that you are, in fact, guilty of the charge to

19  which you seek to plead guilty and you will have to answer my

20  questions and admit your guilt.  In that way, you will be

21  giving up your right not to incriminate yourself.

22          Do you understand that, Mr. Campos?

23          DEFENDANT A. CAMPOS:  Yes, Your Honor.

24          THE COURT:  Do you understand that, Mr. Fiore?

25          DEFENDANT FIORE:  Yes, Your Honor.

33

1          THE COURT:  And do you understand that, Mr. Kocaj?

2          DEFENDANT KOCAJ:  Yes, Your Honor.

3          THE COURT:  Are you willing to give up your right to

4   a trial and the other rights that I have just discussed?

5          Mr. Campos?

6          DEFENDANT A. CAMPOS:  Yes, Your Honor.

7          THE COURT:  Mr. Fiore?

8          DEFENDANT FIORE:  Yes, Your Honor.

9          THE COURT:  Mr. Kocaj?

10          DEFENDANT KOCAJ:  Yes, Your Honor.

11          THE COURT:  I now want to talk with you about the

12   sentencing scheme that is applicable here.

13          Mr. Campos and Mr. Fiore, the statute that you are

14   accused of violating in Count One of the indictment carries a

15   prison term of up to three years.

16          Do you understand that, Mr. Campos?

17          MR. MAZUREK:  Your Honor, I think you misspoke.

18   It's prison term of up to 20 years under Count One.

19          THE COURT:  I'm sorry.  I thought I said 20.

20          DEFENDANT A. CAMPOS:  I'm fine with that,

21   Your Honor.

22          MR. EDELMAN:  I thought you said three, Your Honor.

23          THE COURT:  I might have been looking at the

24   supervised release term.  I apologize.  The maximum term of

25   imprisonment on Count One is, in fact, 20 years.

34

1          Do you understand that, Mr. Campos?

2          DEFENDANT A. CAMPOS:  Yes, Your Honor.

3          THE COURT:  Do you understand that, Mr. Fiore?

4          DEFENDANT FIORE:  Yes, Your Honor.

5          THE COURT:  And I think what I will do since the two

6   of them are pleading to the same count, I'll go through all

7   the penalties for Count One and then I'll address Mr. Kocaj.

8          With respect to Count One, in addition to a prison

9   term of up to 20 years, the sentencing court can impose a

10  supervised release term of up to three years.  The supervised

11  release term would follow any term of imprisonment and if you

12  violated a condition of supervised release, you could then be

13  sent back to prison for up to an additional two years.  If

14  that happened, you would not receive credit for time already

15  spent in prison nor would you receive credit for time

16  previously served on post-release supervision.

17         Do you understand that, Mr. Campos?

18         DEFENDANT A. CAMPOS:  Yes, Your Honor.

19         THE COURT:  Do you understand that, Mr. Fiore?

20         DEFENDANT FIORE:  Yes, Your Honor.

21         THE COURT:  In addition, the sentencing court can

22  also impose a fine of up to the greater of $250,000 or twice

23  the gross gain or twice the gross loss resulting from the

24  charge on which you are convicted.

25         Do you understand that, Mr. Campos?

35

1          DEFENDANT A. CAMPOS:  Yes, Your Honor.

2          THE COURT:  Do you understand that, Mr. Fiore?

3          DEFENDANT FIORE:  Yes, Your Honor.

4          THE COURT:  And I'm going to ask the government to

5     give its best estimate of what the gross gain or gross loss

6     would be with respect to each of these two defendants.

7          MR. EDELMAN:  Your Honor, the estimate at this time

8     is $1.3 million.

9          THE COURT:  For both of them?

10         MR. EDELMAN:  Correct.

11         THE COURT:  And so that would be times 2, correct?

12         MR. EDELMAN:  Correct, Your Honor.

13         THE COURT:  So addressing Mr. Campos and Mr. Fiore,

14    if the government's estimate is correct, then twice the gross

15    gain or twice the gross loss would be greater than $250,000

16    and your total exposure for a fine would be $2.6 million.

17         Do you understand that, Mr. Campos?

18         DEFENDANT A. CAMPOS:  Yes, Your Honor.

19         THE COURT:  Do you understand that, Mr. Fiore?

20         DEFENDANT FIORE:  Yes, Your Honor.

21         THE COURT:  And if there is a dispute about the

22    amount of the gain or loss, that is a matter that would be

23    resolved by Judge Block.

24         In addition to everything I have laid out so far,

25    there is also a mandatory restitution in the amount of

CMH        OCR        RMR        CRR        FCRR

36

1   $1 million to be paid in accordance with the restitution order

2   to be filed under seal with the court in connection with your

3   plea.

4          Do you understand that, Mr. Campos?

5          DEFENDANT A. CAMPOS:  Yes, Your Honor.

6          THE COURT:  Do you understand that, Mr. Fiore?

7          DEFENDANT FIORE:  Yes, Your Honor.

8          THE COURT:  And I just want to note that restitution

9   is different than a fine.  The court can impose both a fine

10  and restitution.  Restitution is an amount that is paid over

11  to the victim or victims of the defendants' offense.  A fine

12  is payable into the United States Treasury.  So even though

13  the fine may be determined based on the amount of the gain or

14  loss, nevertheless, that is separate and can be in addition to

15  an order of restitution.

16         Do you understand that, Mr. Campos?

17         DEFENDANT A. CAMPOS:  Yes, Your Honor.

18         THE COURT:  Do you understand that, Mr. Fiore?

19         DEFENDANT FIORE:  Yes, Your Honor.

20         THE COURT:  The sentencing court will impose a

21  mandatory $100 special assessment.

22         Do you understand that, Mr. Campos?

23         DEFENDANT A. CAMPOS:  Yes, Your Honor.

24         THE COURT:  Do you understand that, Mr. Fiore?

25         DEFENDANT FIORE:  Yes, Your Honor.

37

1          THE COURT:  I now want to turn to the sentencing
2     scheme that is applicable to Mr. Kocaj.
3          Mr. Kocaj, the count to which you are seeking to
4     plead guilty, Count 16, also carries a prison term of up to 20
5     years.  Do you understand that?
6          DEFENDANT KOCAJ:  Yes, Your Honor.
7          THE COURT:  And it also carries a supervised release
8     term of up to three years to follow any term of imprisonment.
9     Do you understand that?
10         DEFENDANT KOCAJ:  Yes, Your Honor.
11         THE COURT:  And, again, if you violate a condition
12    of supervised release, you could then be sent back to prison
13    for up to two years without credit for pre-release
14    imprisonment or time spent on post-release supervision.
15         Do you understand that?
16         DEFENDANT KOCAJ:  Yes, Your Honor.
17         THE COURT:  The maximum fine that can be imposed
18    upon you is $250,000.  Do you understand that?
19         DEFENDANT KOCAJ:  Yes, Your Honor.
20         THE COURT:  And in addition to a fine, there is a
21    mandatory order the restitution in the full amount of each
22    victim's losses as determined by the court.
23         Do you understand that?
24         DEFENDANT KOCAJ:  Yes, Your Honor.
25         THE COURT:  And Mr. Edelman, do you have an estimate

38

1 as to the amount of restitution?

2       MR. EDELMAN:  We don't have an estimate as to the

3 amount of restitution at this time, however, I'll note for, at

4 least for guidelines purposes, we estimate the loss to be at

5 least $150,000.

6       THE COURT:  All right.  And, again, Mr. Kocaj, if

7 there's any issue about the amount of the loss, that would be

8 a matter for Judge Block to resolve.

9       Lastly, he will impose a mandatory $100 special

10 assessment.  Do you understand that, Mr. Kocaj?

11       DEFENDANT KOCAJ:  Yes, Your Honor.

12       THE COURT:  All right.  Now I want to talk with the

13 three of you about the sentencing guidelines.

14       Under the Sentencing Reform Act of 1984, the United

15 States Sentencing Commission has issued guidelines for judges

16 to consider in determining the sentence in a criminal case.

17 In determining the sentence, the court is obligated to

18 calculate the applicable sentencing guideline range and to

19 consider that range, possible departures under the guidelines

20 and other sentencing factors including those specified by

21 statute.

22       Have you and your attorney talked about how the

23 guidelines might apply to your case?

24       Mr. Campos?

25       DEFENDANT A. CAMPOS:  Yes, Your Honor.

39

1          THE COURT:  Mr. Fiore?

2          DEFENDANT FIORE:  Yes, Your Honor.

3          THE COURT:  Mr. Kocaj?

4          DEFENDANT KOCAJ:  Yes, Your Honor.

5          THE COURT:  You should understand that Judge Block

6     will not be able to do the guideline calculation for your case

7     until after the Probation Department has prepared a

8     presentence report and you and your attorney have had an

9     opportunity to read it and to challenge the facts reported by

10    the Probation Officer.

11         Do you understand that, Mr. Campos?

12         MR. CAMPOS:  Yes, Your Honor.

13         THE COURT:  Do you understand that, Mr. Fiore?

14         DEFENDANT FIORE:  Yes, Your Honor.

15         THE COURT:  Do you understand that, Mr. Kocaj?

16         DEFENDANT KOCAJ:  Yes, Your Honor.

17         THE COURT:  You should also understand that after it

18    has been determined what guideline applies to a case, the

19    judge has the authority to impose a sentence that is more

20    severe or less severe than the sentence called for by the

21    guidelines depending on what is a reasonable sentence.

22         Do you understand that, Mr. Campos?

23         DEFENDANT A. CAMPOS:  Yes, Your Honor.

24         THE COURT:  Do you understand that, Mr. Fiore?

25         DEFENDANT FIORE:  Yes, Your Honor.

40

1        THE COURT:  Do you understand that, Mr. Kocaj?

2        DEFENDANT KOCAJ:  Yes, Your Honor.

3        THE COURT:  I am now going to ask the government to

4   give its best estimate of what the guideline range of

5   imprisonment is likely to be as to each defendant.  I will

6   also ask defense counsel to give their estimates.  I want to

7   emphasize at the outset that the attorneys' estimates are not

8   binding upon Judge Block even if both your lawyer and the

9   government happen to be in agreement.

10        I should note, as a preliminary matter, that the

11   government's calculations which are set forth in the plea

12   agreements assume a 2 point reduction based on a global

13   resolution of the case and the precondition to that is that

14   all 12 defendants in the same indictment plead guilty by

15   today.  I will represent to you that the three of you are

16   Defendants 10, 11 and 12, so once this proceeding is complete,

17   that precondition will have been met.

18        Before I do that, I neglected to review the plea

19   agreements with each of the defendants.  I will do that now.

20        I have the three plea agreements before me.

21   Mr. Campos' plea agreement will be marked as Court Exhibit 10,

22   Mr. Fiore's will be marked as Court Exhibit 11 and Mr. Kocaj's

23   will be marked as Court Exhibit 12.

24        Mr. Campos, turning to your plea agreement first,

25   have you received a copy of this document, have you read it in

41

1   its entirety and discussed it with your attorney?

2           DEFENDANT A. CAMPOS:  Yes, Your Honor.

3           THE COURT:  And have you signed this document?

4           DEFENDANT A. CAMPOS:  Yes, Your Honor.

5           THE COURT:  Does your plea agreement fully and

6   accurately reflect your understanding of the agreement you

7   have reached with the government concerning your guilty plea?

8           DEFENDANT A. CAMPOS:  Yes, Your Honor.

9           THE COURT:  Other than the promises contained in

10  this document, has anyone made any promise that has caused you

11  to plead guilty?

12          DEFENDANT A. CAMPOS:  No, Your Honor.

13          THE COURT:  Has anyone made any promise to you as to

14  what your sentence will be?

15          DEFENDANT A. CAMPOS:  No, Your Honor.

16          THE COURT:  Mr. Fiore, your plea agreement is marked

17  Court Exhibit 12.  Have you received a copy of it, read it in

18  its entirety and discussed it with your attorney?

19          DEFENDANT FIORE:  Yes, Your Honor.

20          THE COURT:  Does your agreement fully and accurately

21  reflect your understanding of the agreement you have reached

22  with the government concerning your guilty plea?

23          DEFENDANT FIORE:  Yes, Your Honor.

24          THE COURT:  Other than the promises contained in

25  Court Exhibit 11, has anyone made any promise that has caused

42

1    you to plead guilty?

2              DEFENDANT FIORE:  No, Your Honor.

3              THE COURT:  Has anyone made any promise to you as to

4    what your sentence will be?

5              DEFENDANT FIORE:  No, Your Honor.

6              THE COURT:  And have you signed a copy of the plea

7    agreement?

8              DEFENDANT FIORE:  Yes, Your Honor.

9              THE COURT:  And lastly, Court Exhibit 12, Mr. Kocaj,

10   have you received a copy of your plea agreement, have you read

11   it in its entirety and discussed it with your attorney?

12             DEFENDANT KOCAJ:  Yes, Your Honor.

13             THE COURT:  And have you signed it?

14             DEFENDANT KOCAJ:  Yes, Your Honor.

15             THE COURT:  Does this document fully and accurately

16   reflect your understanding of the agreement you have reached

17   with the government concerning your guilty plea?

18             DEFENDANT KOCAJ:  Yes, Your Honor.

19             THE COURT:  Other than the promises contained in

20   this document, has anyone made any promise that has caused you

21   to plead guilty?

22             DEFENDANT KOCAJ:  No, Your Honor.

23             THE COURT:  Has anyone made any promise to you as to

24   what your sentence will be?

25             DEFENDANT KOCAJ:  No, Your Honor.

43

1          THE COURT:  Returning to the subject of the

2     sentencing guidelines, with respect to Mr. Campos, it appears

3     from Section 2 or paragraph 2 of his plea agreement, the

4     government has calculated an adjusted offense level of 23.

5     Assuming a global resolution, and that with an additional two

6     level reduction to 21, it's a range of imprisonment of 41 to

7     51 months, assuming he falls within Criminal History

8     Category II.  Moreover, if Judge Block gives him an additional

9     one level reduction based on his guilty plea, that would

10    result in a range of imprisonment of 37 to 46 months, again,

11    assuming he falls within Criminal History Category II.

12              Mr. Edelman, is that the government's calculation?

13              MR. EDELMAN:  Yes, based on all the information now

14    known to our office, that is correct.

15          THE COURT:  And Mr. Mazurek, you have done your own

16    calculation and you stipulate to the government's calculation?

17              MR. MAZUREK:  As indicated in paragraph 2 of the

18    plea agreement, that is correct, Your Honor.

19          THE COURT:  And you discussed this matter with

20    Mr. Campos?

21              MR. MAZUREK:  I have and I believe he fully

22    understands it.

23          THE COURT:  Mr. Campos, do you agree with what your

24    lawyer just said?

25              DEFENDANT A. CAMPOS:  Yes, Your Honor.

44

1        THE COURT:  Turning now to Mr. Fiore's plea

2   agreement, I see that the government has calculated an

3   adjusted offense level of 23.  With a 2 point reduction for

4   acceptance of responsibility, the adjusted offense level would

5   be 21.  That would carry a range of imprisonment of 41 to

6   51 months, assuming he falls within Criminal History

7   Category II.  In addition, if Judge Block were to give him an

8   additional one level reduction based on his guilty plea, that

9   would carry a range of imprisonment of 37 to 46 months

10  assuming, again, that he falls within Criminal History

11  Category II.

12       Mr. Edelman, is this an accurate summary of the

13  government's calculations?

14       MR. EDELMAN:  Yes, based on the information now

15  known to our office.

16       THE COURT:  And Mr. DiGiansante, you have done your

17  own calculation and you stipulate to the government's

18  calculation?

19       MR. DiGIANSANTE:  Yes, Your Honor.

20       THE COURT:  And you have discussed this matter with

21  your client?

22       MR. DiGIANSANTE:  I have, Your Honor.

23       THE COURT:  And Mr. Fiore, you understand the

24  attorney's calculations in this case?

25       DEFENDANT FIORE:  Yes, Your Honor.

45

1          THE COURT:  Lastly, Mr. Kocaj, as to him, the

2     government has calculated an adjusted offense level of 17.

3     With a further 2 point reduction for acceptance of

4     responsibility, that would result in a range of imprisonment

5     of 18 to 24 months, assuming he falls within Criminal History

6     Category I.  If Judge Block were to give him an additional one

7     level reduction based on his guilty plea, that would carry a

8     range of imprisonment of 15 to 21 months, again, assuming he

9     falls within Criminal History Category I.

10          Mr. Edelman, is that an accurate summary of your

11     calculations as to Mr. Kocaj?

12          MR. EDELMAN:  Correct, Your Honor.

13          THE COURT:  And Mr. Booth, you have done your own

14     calculations and you stipulate to the government's

15     calculation?

16          MR. BOOTH:  Yes, Your Honor.

17          THE COURT:  And you have discussed this with

18     Mr. Kocaj?

19          MR. BOOTH:  I have.

20          THE COURT:  And Mr. Kocaj, you understand the

21     attorney's estimates as to you?

22          DEFENDANT KOCAJ:  Yes, Your Honor.

23          THE COURT:  And, again, I want to emphasize to all

24     three of you that these estimates are not binding upon

25     Judge Block.  He will have to do his own calculations under

1    the guidelines and he will determine what the adjusted offense

2    level is, whether to give the additional one point reduction

3    for acceptance of responsibility beyond the usual two, and he

4    will determine the corresponding range of imprisonment.

5             I now want to review with each of you a specific

6    provision that appears in each of your plea agreements.  This

7    is set forth in paragraph 4 or section 4.

8             Each of those agreements is identical except for the

9    number of months and I won't specify what each of the three

10   plea agreement says, but they each provide, in substance and

11   in part, that the defendant will not file an appeal or

12   otherwise challenge his conviction or sentence in the event

13   that the court imposes a term of imprisonment of a certain

14   number of months or below.

15            With respect to Mr. Campos and Mr. Fiore, that

16   number is 57 months.  With respect to Mr. Kocaj, that number

17   is 27 months.

18            I do see there is a distinction between the Campos

19   and Fiore agreements and the Kocaj agreements in that there is

20   a specific carveout for an argument that would be preserved.

21   In a moment, I'll get to that.  Well, the carveout is except

22   that the defendant may appeal or otherwise challenge the

23   restitution and forfeiture portion of the sentence in the

24   event the court imposes restitution and forfeiture exceeding a

25   combined amount of $1 million.

47

1        Now, before I explain the implications of that to

2   the defendants, I just would like clarification from the

3   government since forfeiture is not even mentioned as a

4   consequence.

5        MR. EDELMAN:  That's correct, Your Honor.  The

6   defendant is not agreeing to pay forfeiture as part of his

7   plea agreement.  I believe the carveout is for the defendant

8   in case, for some reason, Judge Block decides to impose

9   additional forfeiture for any reason in addition to the

10   $1 million restitution that is agreed upon.

11        THE COURT:  Okay.  So let me explained the legal

12   implication of paragraph 4.

13        Prior to the time that you are sentenced by

14   Judge Block, you and your lawyer are free to argue that you

15   should not be sent to prison for as long as the number of

16   months specified in that section, that is, 57 months in the

17   case of Mr. Campos and Mr. Fiore, 27 months in the case of

18   Mr. Kocaj.  You can argue that you should be given the

19   additional one level reduction that Judge Block has the

20   discretion to grant to you.  You can argue that you should be

21   sentenced below the applicable guideline range or in any

22   event, at the low end of the range rather than the upper end

23   of that range.

24        All of these arguments and other good faith

25   arguments are available to you and your lawyer before your

1  sentence, however, because of the language in paragraph 4,

2  once Judge Block sentences you, as long as he does not send

3  you to prison for more than the number of months specified in

4  your agreement, that is the end of the matter except for the

5  carveout as to Mr. Campos and Mr. Fiore.  In other words, for

6  Mr. Campos and Mr. Fiore, if Judge Block does not send you to

7  prison for more than 57 months, you may not file an appeal or

8  otherwise challenge your conviction or sentence except if he

9  imposes restitution and forfeiture exceeding a combined amount

10  of $1 million.

11          Do you understand that, Mr. Campos?

12          DEFENDANT A. CAMPOS:  Yes, Your Honor.

13          THE COURT:  Do you understand that, Mr. Fiore?

14          DEFENDANT FIORE:  Yes, Your Honor.

15          THE COURT:  And Mr. Kocaj, you don't have the

16  carveout.  As long as Judge Block does not send you to prison

17  for more than 27 months, you may not challenge your conviction

18  or sentence on appeal or otherwise.  Do you understand that?

19          DEFENDANT KOCAJ:  Yes, Your Honor.

20          THE COURT:  You should also understand that parole

21  has been abolished and if you are sentenced to prison, you

22  will not be released on parole.

23          Do you understand that, Mr. Campos?

24          DEFENDANT A. CAMPOS:  Yes, Your Honor.

25          THE COURT:  Do you understand that, Mr. Fiore?

49

1          DEFENDANT FIORE:  Yes, Your Honor.

2          THE COURT:  Do you understand that, Mr. Kocaj?

3          DEFENDANT KOCAJ:  Yes, Your Honor.

4          THE COURT:  Do any of you have any questions you'd

5     like to ask me about the charges, your rights or anything else

6     relating to this matter?

7          Mr. Campos?

8          DEFENDANT A. CAMPOS:  No, Your Honor.

9          THE COURT:  Mr. Fiore?

10         DEFENDANT FIORE:  No, Your Honor.

11         THE COURT:  Mr. Kocaj?

12         DEFENDANT KOCAJ:  No, Your Honor.

13         THE COURT:  Mr. Campos, are you ready to plead?

14         DEFENDANT A. CAMPOS:  Yes, Your Honor.

15         THE COURT:  Mr. Mazurek, do you know any reason why

16    your client should not plead guilty?

17         MR. MAZUREK:  No, Your Honor.

18         THE COURT:  Are you aware of any viable legal

19    defense to the charge?

20         MR. MAZUREK:  Not at this time.

21         THE COURT:  Mr. Campos, what is your plea to

22    Count One, the racketeering conspiracy charge, guilty or not

23    guilty?

24         DEFENDANT A. CAMPOS:  Guilty.

25         THE COURT:  Are you making this plea of guilty

1   voluntarily and of your own free will?

2            DEFENDANT A. CAMPOS:  Yes, Your Honor.

3            THE COURT:  Has anyone threatened or forced you to

4   plead guilty?

5            DEFENDANT A. CAMPOS:  No, Your Honor.

6            THE COURT:  Other than the agreement with the

7   government that's been marked Court Exhibit 10, has anyone

8   made any promise that has caused you to plead guilty?

9            DEFENDANT A. CAMPOS:  No, Your Honor.

10            THE COURT:  Has anyone made any promise to you as to

11   what your sentence will be?

12            DEFENDANT A. CAMPOS:  No, Your Honor.

13            THE COURT:  Again, Count One charges that between

14   approximately February of 2013 and until the filing of the

15   indictment, you and others being employed by and associated

16   with an enterprise engaged in those activities affecting

17   interstate and foreign commerce, knowingly and intentionally

18   conspired or agreed to conduct and participate directly and

19   indirectly in the conduct of the affairs of that enterprise

20   for a pattern of racketeering activity consisting of certain

21   racketeering acts that are specified below and some of which

22   you are pleading guilty to and that each defendant agreed that

23   a conspirator would commit at least two acts of racketeering

24   in conducting the affairs of the enterprise.

25            Are you, in fact, guilty of that offense?  Did you

1   do that?

2          DEFENDANT A. CAMPOS:  Yes, Your Honor.

3          THE COURT:  Would you tell me in your own words what

4   you did that makes you guilty of the Count One racketeering

5   conspiracy?

6          DEFENDANT A. CAMPOS:  Between January 2014 and

7   December 2019, I together with others participated in an

8   association in fact as alleged in Count One of the indictment

9   and engaged in a pattern of activity in the Eastern District

10  of New York and elsewhere which included the following acts.

11         As referred to Act 5 in the indictment, in the

12  Eastern District of New York and elsewhere, I used e-mails and

13  other wire transmissions to cause CWC, a carpentry and drywall

14  company, to fraudulently obtain money or property due to the

15  IRS by misrepresenting the amount of employer payroll taxes

16  that CWC was required to pay.

17         As to Predicate Acts 7 and 10, in the Eastern

18  District of New York and elsewhere, I knowingly engaged in

19  financial transactions affecting interstate commerce with

20  money derived from this tax fraud in amounts that exceeded

21  $10,000.

22         These financial transactions included causing others

23  to cash CWC checks at check cashers for work that was never

24  performed and distributed that cash to laborers.  I also

25  caused CWC to use some of the proceeds derived from the

1  payroll tax fraud to pay for labor and materials on the Dorset

2  Properties project knowing these proceeds derived from the

3  payroll tax fraud.

4  　　　　THE COURT:  And did that activity as to Predicate

5  Acts 7 and 10, approximately when did those occur?  With

6  respect to Racketeering Act 7, the indictment says between

7  October of 2014 and June of 2019.  Is that --

8  　　　　DEFENDANT A. CAMPOS:  That's when it happened,

9  Your Honor, yes.

10  　　　　THE COURT:  And with respect to the Dorset

11  Properties racketeering act, that was between March of 2018

12  and March of 2019?

13  　　　　DEFENDANT A. CAMPOS:  Yes, Your Honor.

14  　　　　THE COURT:  And Predicate Act 5 which relates to

15  CWC, that was sometime between June of 2014 and December of

16  2019?

17  　　　　DEFENDANT A. CAMPOS:  Yes, Your Honor.

18  　　　　THE COURT:  And Mr. Edelman, I take it you would

19  proffer that the e-mails and other wire transmissions were

20  interstate in Predicate Act 5?

21  　　　　MR. EDELMAN:  That's correct, Your Honor.

22  　　　　THE COURT:  Is there any further inquiry you would

23  like me to make of Mr. Campos?

24  　　　　MR. EDELMAN:  I don't believe further inquiry is

25  required.  The only thing I will say is I believe Mr. Campos

53

1   said as to Racketeering Act 5, that it occurred in the Eastern

2   District of New York and elsewhere.  That is true but I also

3   note that that racketeering act is alleged to have occurred in

4   the Southern District of New York and elsewhere.

5           THE COURT:  And Mr. Mazurek, I take it that any

6   venue issue is waived, correct?

7           MR. MAZUREK:  That's correct, Your Honor.

8           THE COURT:  All right.  Mr. Edelman, anything

9   further with respect to Mr. Campos?

10          MR. EDELMAN:  No, Your Honor.

11          THE COURT:  All right.  Turning now to Mr. Fiore,

12  are you ready to plead?

13          DEFENDANT FIORE:  Yes, Your Honor.

14          THE COURT:  Mr. DiGiansante, do you know of any

15  reason why Mr. Fiore should not plead guilty?

16          MR. DiGIANSANTE:  No, Your Honor.

17          THE COURT:  Are you aware of any viable legal

18  defense to the charge?

19          MR. DiGIANSANTE:  No, Your Honor.

20          THE COURT:  Mr. Fiore, what is your plea to

21  Count One of the indictment, the racketeering conspiracy,

22  guilty or not guilty?

23          DEFENDANT FIORE:  Guilty, Your Honor.

24          THE COURT:  Are you making this plea of guilty

25  voluntarily and of your own free will?

54

1          DEFENDANT FIORE:  Yes, Your Honor.

2          THE COURT:  Has anyone threatened or forced you to

3     plead guilty?

4          DEFENDANT FIORE:  No, Your Honor.

5          THE COURT:  Other than your agreement with the

6     government that's been marked Court Exhibit 11, has anyone

7     made any promise that has caused you to plead guilty?

8          DEFENDANT FIORE:  No, Your Honor.

9          THE COURT:  Has anyone made any promise to you as to

10    what your sentence will be?

11         DEFENDANT FIORE:  No, Your Honor.

12         THE COURT:  I am not going to summarize again

13    Count One, the racketeering conspiracy charge.  I did that in

14    connection with Mr. Campos' allocution just a few minutes ago.

15         Did you, in fact, do what is alleged in Count One?

16         DEFENDANT FIORE:  Yes, Your Honor.

17         THE COURT:  Would you tell me in your own words what

18    you did that makes you guilty of that offense?

19         DEFENDANT FIORE:  Between January 2014 and

20    December 2019, I together with others participated and

21    associated in fact as alleged in Count One of the indictment,

22    a pattern of activity in the Eastern District of New York and

23    elsewhere which included the following acts.

24         As to Predicate Act 5 in the indictment, in the

25    Eastern District of New York and elsewhere, I used e-mails and

1  other wire transmissions to cause CWC, a carpentry and drywall

2  company, to fraudulently obtain money or property due to the

3  IRS by misrepresenting the amount of employee payroll taxes

4  that CWC was required to pay.

5       As to Predicate Act 7, in the Eastern District of

6  New York and elsewhere, I knowingly engaged in financial

7  transactions affecting interstate commerce with money derived

8  from this tax fraud in amounts that exceeded $10,000.  These

9  financial transactions included causing others to cash CWC

10  checks at check cashers for work that was never performed and

11  distributing that cash to laborers.

12       As to Predicate Act 13, in the Eastern District of

13  New York and elsewhere, I used e-mails and other wire

14  transmissions to agree with others to defraud Construction

15  Company Number 2 by providing materials for construction at a

16  White Plains gym for the benefit of an employee of

17  Construction Company Number 2.  The materials were billed to

18  an unrelated Construction Company Number 2 construction

19  project.

20       As to Predicate Act 16, in November 2019, I

21  encouraged a witness to give false and misleading testimony in

22  connection with a grand jury proceeding in the Eastern

23  District of New York.

24       THE COURT:  And I take it you knew that all of these

25  acts were wrong, correct?

56

1          DEFENDANT FIORE:  Correct, Your Honor.

2          THE COURT:  And I think a couple of those predicate

3     acts are alleged to have occurred in the Southern District of

4     New York.

5          Mr. DiGiansante, I take it venue is waived?

6          MR. DiGIANSANTE:  That is correct, Your Honor.

7          THE COURT:  And just with respect to the timing,

8     Mr. Fiore, as to Predicate Act 5, the CWC related charge, the

9     indictment alleges that those acts occurred between

10    approximately June of 2014 and December of 2019.  Is that

11    estimate accurate?

12         DEFENDANT FIORE:  Yes, Your Honor.

13         THE COURT:  And with respect to Predicate Act 7, the

14    indictment alleges that the acts occurred between

15    approximately October of 2014 and June of 2019.  Is that

16    accurate?

17         DEFENDANT FIORE:  Yes, Your Honor.

18         THE COURT:  And with respect to Predicate Act 13,

19    the indictment alleges that those acts occurred between

20    December of 2018 and June of 2019.  Is that accurate?

21         DEFENDANT FIORE:  Yes, Your Honor.

22         THE COURT:  And Mr. Edelman has already indicated

23    that the government would be prepared to prove that the

24    e-mails and wire transmissions that are alleged in Predicate

25    Act 5, that there were interstate wires used.  Correct?

1          MR. EDELMAN:  That's correct, Your Honor.  I also

2    note that's also true for Racketeering Act 13.

3          THE COURT:  And is there any further inquiry you'd

4    like me to make of Mr. Fiore?

5          MR. EDELMAN:  I don't believe further inquiry is

6    required.  I just note as to Racketeering Act 16, as alleged

7    in the indictment, the attempt to have someone provide false

8    testimony relates to the additional check scheme which is one

9    of the predicates to which Mr. Fiore just pled guilty, just so

10   we know which racketeering act we're discussing.

11         THE COURT:  All right.  And Mr. Campos, I didn't ask

12   you this, but I take it you admitted to having committed the

13   certain predicate acts and having committed the offense

14   charged in Count One, you knew it was wrong to do that?

15         DEFENDANT A. CAMPOS:  Yes, Your Honor.

16         THE COURT:  Lastly, turning to Mr. Kocaj, are you

17   ready to plead?

18         DEFENDANT KOCAJ:  Yes, Your Honor.

19         THE COURT:  Mr. Booth, do you know any reason why

20   your client should not plead guilty?

21         MR. BOOTH:  I do not.

22         THE COURT:  Are you aware of any viable legal

23   defense to the charge?

24         MR. BOOTH:  Not at this time, Judge.

25         THE COURT:  Mr. Kocaj, what is your plea to Count 16

58

1   of the indictment which charges wire fraud conspiracy in

2   connection with Construction Company Number 1, guilty or not

3   guilty?

4           DEFENDANT KOCAJ:  Guilty, Your Honor.

5           THE COURT:  Are you making this plea of guilty

6   voluntarily and of your own free will?

7           DEFENDANT KOCAJ:  Yes, Your Honor.

8           THE COURT:  Has anyone threatened or forced you to

9   plead guilty?

10          DEFENDANT KOCAJ:  No, Your Honor, no.

11          THE COURT:  Other than the agreement with the

12  government that's been marked Court Exhibit 12, has anyone

13  made any promise that has caused you to plead guilty?

14          DEFENDANT KOCAJ:  No, Your Honor.

15          THE COURT:  Has anyone made any promise to you as to

16  what your sentence will be?

17          DEFENDANT KOCAJ:  No, Your Honor.

18          THE COURT:  Again, Count 16 charges you with

19  participating in a conspiracy between approximately June of

20  2018 and June of 2019 to defraud Construction Company Number 1

21  and using interstate e-mails and text messages in furtherance

22  of that scheme to defraud.

23          Did you, in fact, commit that offense?

24          DEFENDANT KOCAJ:  Yes, Your Honor.

25          THE COURT:  Would you tell me in your own words what

59

1  you did that makes you guilty of the offense charged in

2  Count 16?

3          DEFENDANT KOCAJ:  In or about February 2019, within

4  the Eastern District of New York, I agreed with another person

5  to incur construction costs that included inflated man-hours

6  on a construction site located at 76 11th Avenue that should

7  not have been paid by Construction Company Number 1, but that

8  I knew was billed improperly through Construction Company

9  Number 1.  I did so with the intent to defraud Construction

10 Company Number 1 and deprive it of money and property and I

11 used interstate e-mails and text messages to do so.

12         THE COURT:  And you knew it was illegal to do that?

13         DEFENDANT KOCAJ:  Yes, Your Honor.

14         THE COURT:  Does the government have any further

15 inquiry that I should make of Mr. Kocaj?

16         MR. EDELMAN:  Your Honor, as we indicated before, I

17 believe Mr. Kocaj's plea allocution is legally sufficient but

18 I note that the government's position as to the scope of that

19 wire fraud conspiracy is beyond what was stated and goes to,

20 for instance, fraudulently paying for work that was performed

21 at the residence of an employee of Construction Company Number

22 1.  I put that on the record but I do agree that Mr. Kocaj's

23 plea agreement satisfies the elements.

24         THE COURT:  All right.  Based on the information

25 provided to me, I find that each defendant is acting

60

1  voluntarily, that they each fully understands his rights and

2  the consequences of his plea and that there is a factual basis

3  for each defendant's plea of guilty.  I, therefore, recommend

4  that Judge Block accept the plea of guilty of each of these

5  defendants.

6          I understand that we do not yet have a sentencing

7  date for any of the defendants.  The Probation Department will

8  be setting a date for sentence in conjunction with

9  Judge Block.  The Probation Department will also be preparing

10 a presentence report as to each of the defendants.  I urge the

11 defendants to cooperate with the Probation Officer.

12         Is there anything else that we need to address

13 before we conclude this proceeding?

14         MR. EDELMAN:  Nothing from the government,

15 Your Honor.  Thank you for your time all this week.

16         MR. MAZUREK:  And nothing for Mr. Campos.  Thank

17 you, Your Honor.

18         MR. DiGIANSANTE:  Nothing further from Mr. Fiore,

19 Your Honor.

20         MR. BOOTH:  And nothing further from Mr. Kocaj.

21 Thank you, Judge.

22         THE COURT:  And I wish everyone a happy new year.

23 Please stay save and healthy.  Goodbye.

24         (Matter concluded.)

25