UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 19-CR-575(FB)

Plaintiff, :

United States Courthouse

-against- : Brooklyn, New York

GEORGE CAMPOS, BENITO DIZENZO and JOHN SIMONLACAJ, :

January 12, 2021

Defendants. : 10:15 o'clock a.m.

- - - - - - - - - - - - - - X

TRANSCRIPT OF PLEADING
BEFORE THE HONORABLE ROANNE MANN
UNITED STATES MAGISTRATE JUDGE.

APPEARANCES:

For the Government: SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK
BY: KEITH EDELMAN
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York

For Deft. G. Campos: FLORIAN MIEDEL, ESQ.

For Deft. B. Dizenzo: JAMES R. MONTELEON, ESQ.

For Deft. J. Simonlacaj: GLENN C. COLTON, ESQ.

Court Reporter: Charleane M. Heading
225 Cadman Plaza East
Brooklyn, New York
(718) 613-2643

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

(All present by videoconference including the defendants.)

THE CLERK: Criminal cause for pleading. United States versus George Campos, Benito Dizenzo, John Simonlacaj, docket number 2018-CR-575.

Will counsel for the government please state their appearance for the record?

MR. EDELMAN: Good morning, Your Honor. Keith Edelman for the United States.

THE COURT: Good morning.

THE CLERK: And for defendant George Campos?

MR. MIEDEL: Good morning. Florian Miedel for George Campos.

THE CLERK: And for Mr. Dizenzo?

MR. MONTELEON: James Monteleon for defendant Benito Dizenzo.

THE COURT: Is that your client with you?

MR. MONTELEON: Yes, Your Honor.

THE COURT: Okay.

THE CLERK: And for Mr. Simonlacaj?

MR. COLTON: Good morning, Your Honor. Glenn Colton from Arent Fox. I do have two of my associates just observing. It's the first time they've gotten to see a video plea and I ask the Court's permission to have them view, of course with the cameras off and muted so they don't get in the

way.

THE COURT: Certainly. In fact, I would ask everyone who is not speaking to please mute your audio.

I hope everyone is safe and healthy. Let me begin this proceeding by having my law clerk, Mr. Proujansky, administer the oath to the three defendants.

THE CLERK: Will the three defendants please raise your right hand.

(The defendants were sworn by the Clerk.)

DEFENDANT G. CAMPOS: Yes.

DEFENDANT DIZENZO: Yes.

DEFENDANT SIMONLACAJ: Yes.

THE CLERK: Mr. Campos, can you state and spell your last name for the record?

DEFENDANT G. CAMPOS: C-A-M-P-O-S.

THE CLERK: And Mr. Dizenzo, can you do the same?

DEFENDANT DIZENZO: Benito Dizenzo, B-E-N-I-T-O, last name, D-I-Z-E-N-Z-O.

THE CLERK: And Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Sure. It's John Simonlacaj. S-I-M-O-N-L-A-C-A-J.

THE COURT: Each of you should understand that having been sworn, your answers to my questions will be subject to the penalties of perjury if you do not answer truthfully.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo? You have to unmute your microphone.

DEFENDANT DIZENZO: Yes, ma'am.

THE COURT: And do you understand what I just said, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: At the outset, I would note that we are proceeding by way of videoconference. The courthouse is essentially closed on account of the pandemic pursuant to an order issued by the Chief Judge. I nevertheless want to make sure that the defendants consent to proceed remotely rather than waiting until the courthouse reopens.

Mr. Miedel, have you discussed this matter with your client, Mr. Campos?

MR. MIEDEL: Yes.

THE COURT: And does he consent?

MR. MIEDEL: Yes.

THE COURT: Mr. Campos, do you consent to proceeding by way of videoconference rather than awaiting the reopening of the courthouse?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Are you making this decision voluntarily and of your own free will?

MR. CAMPOS: Yes.

THE COURT: Mr. Monteleon, have you discussed the matter proceeding with your client, Mr. Dizenzo?

MR. MONTELEON: Yes, Your Honor.

THE COURT: Does he consent?

MR. MONTELEON: Yes, Your Honor.

THE COURT: Mr. Dizenzo, do you agree to proceed remotely rather than waiting until the courthouse reopens?

DEFENDANT DIZENZO: Yes, Your Honor.

THE COURT: Are you making this decision voluntarily and of your own free will?

DEFENDANT DIZENZO: Yes.

THE COURT: I'm getting feedback and an echo. Does anyone else hear it?

THE CLERK: Yes. Mr. Campos and Mr. Miedel are in the same room so if one of you could turn down their volume.

THE COURT: And, lastly, Mr. Colton, have you talked with Mr. Simonlacaj about proceeding remotely?

MR. COLTON: Yes, I have, Your Honor.

THE COURT: Does he consent?

MR. COLTON: Yes, Your Honor.

THE COURT: Mr. Simonlacaj, do you agree to proceed by videoconference rather than waiting until the courthouse reopens?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Are you making this decision voluntarily and of your own free will?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: I find that the consent of each of the three defendants is knowing, intelligent and voluntary. I further find that proceeding remotely serves the interest of justice in light of the global pandemic and the health risks for proceeding remotely at this time.

I have before me three forms titled "Consent to have a plea taken before a United States Magistrate Judge," each one from each of the, one from each of the three defendants currently before me.

Mr. Campos, I don't know if you can see it but I have the signed form that purports to have your signature on it. Did you, in fact, sign such a consent form?

DEFENDANT G. CAMPOS: Yes.

THE COURT: And did you talk with your attorney about consenting to have a Magistrate Judge take the plea?

DEFENDANT G. CAMPOS: Yes.

THE COURT: And do you make this decision voluntarily and of your own free will?

DEFENDANT G. CAMPOS: Yes, I do.

THE COURT: Mr. Dizenzo, I have a form that purports to have your signature, I don't know if you can see it, but did you sign the form?

DEFENDANT DIZENZO: Yes.

THE COURT: And you discussed it with your attorney?

DEFENDANT DIZENZO: Yes.

THE COURT: And are you making this decision voluntarily and of your own free will?

DEFENDANT DIZENZO: Yes.

THE COURT: And, lastly, Mr. Simonlacaj, I have your form before me. It has what I believe is your electronic signature. Am I correct that you electronically signed one of these consent forms?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: And did you first speak with your attorney about this matter?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: And are you making this decision voluntarily and of your own free will?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: I want to make sure that each of the three defendants understands what they've agreed to by signing these consent forms. This is Judge Block's case. He's the judge who will sentence the three of you and will make the ultimate decision as to whether to accept your guilty pleas. If you wish, you have the absolute right to have Judge Block listen to your plea and if you choose to do that, there will be no prejudice or harm to you.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: On the other hand, if you wish, I will listen to your plea. I am the United States Magistrate Judge. This proceeding is being recorded. There is a court reporter present. The court reporter will make a transcript of the proceeding. Judge Block will review the transcript to decide whether to accept your plea. He will also review it in connection with your sentence.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes, Your Honor.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

THE DEFENDANT: Yes.

THE COURT: Understanding what I've just said, do you still wish to give up your right to have Judge Block listen to the plea and are you prepared to proceed before me at this time?

Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: Have any promises or threats been made to you to get you to agree to have me hear your plea?

Mr. Campos?

DEFENDANT G. CAMPOS: No.

THE COURT: Mr. Dizenzo?

DEFENDANT DIZENZO: No.

THE COURT: I find that the consent of each of these three defendants is knowing, intelligent and voluntary and, therefore, I am prepared to proceed.

Addressing the three defendants before accepting your guilty plea, there are a number of questions that I have to ask you to make sure that it's a valid plea. If you don't understand any of my questions, please say so and I'll reword the question.

Starting with Mr. Campos, how old are you, sir?

DEFENDANT G. CAMPOS: Seventy-three.

THE COURT: How far did you go in school?

DEFENDANT G. CAMPOS: I didn't graduate high school so I -- the 9th, the 10th.

THE COURT: Grades?

DEFENDANT G. CAMPOS: I don't remember exactly.

THE COURT: Ninth or 10th grade?

MR. CAMPOS: Hello?

THE COURT: Ninth or 10th grade?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Have you had any difficulty communicating with your attorney?

DEFENDANT G. CAMPOS: Excuse me?

THE COURT: Have you had any difficulty communicating with your attorney?

DEFENDANT G. CAMPOS: Not at all.

THE COURT: Are you now or have you recently been under the care of a doctor or psychiatrist?

DEFENDANT G. CAMPOS: Well, medical doctor but not a psychiatrist.

THE COURT: And what problem, medical problem or condition are you being treated for?

DEFENDANT G. CAMPOS: Well, now I'm just on medication for my heart. I had a stent put in and I had a little surgery, I forgot, not on the heart itself, about a year ago.

THE COURT: How long ago?

DEFENDANT G. CAMPOS: About a year ago.

THE COURT: And what medications are you taking for your heart, prescription medications?

DEFENDANT G. CAMPOS: Yes.

THE COURT: And within the past 24 hours, have you taken those prescribed medications in the prescribed doses?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Other than those prescribed medications, within the past 24 hours, have you taken any drugs, narcotics, medicine or pills or drunk any alcoholic beverages?

DEFENDANT G. CAMPOS: No.

THE COURT: Have you ever been hospitalized or treated for substance abuse or for any mental or emotional problem?

DEFENDANT G. CAMPOS: No.

THE COURT: Is your mind clear now?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand what's going on here now?

DEFENDANT G. CAMPOS: Yes, I do.

THE COURT: All right. Turning now to Mr. Dizenzo, how old are you?

DEFENDANT DIZENZO: Fifty-four.

THE COURT: How far did you go in school?

DEFENDANT DIZENZO: Two years of community college.

THE COURT: Have you had any difficulty communicating with your attorney?

DEFENDANT DIZENZO: No.

THE COURT: Are you now or have you recently been in

the care of a physician or psychiatrist?

DEFENDANT DIZENZO: No.

THE COURT: In the past 24 hours, have you taken any drugs, narcotics, medicine or pills or drunk any alcoholic beverages?

DEFENDANT DIZENZO: No.

THE COURT: Have you ever been hospitalized for substance abuse or for any mental or emotional problems?

DEFENDANT DIZENZO: No.

THE COURT: Is your mind clear now?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand what's going on here today?

DEFENDANT DIZENZO: Yes.

THE COURT: Mr. Simonlacaj, how old are you?

Mr. Simonlacaj, how old are you?

DEFENDANT SIMONLACAJ: Fifty-one, Your Honor.

THE COURT: How far did you go in school?

DEFENDANT SIMONLACAJ: I have a Bachelor's degree in management.

THE COURT: Have you had any difficulty communicating with your attorney?

DEFENDANT SIMONLACAJ: No, not at all.

THE COURT: Are you now or have you recently been under the care of a doctor or psychiatrist?

DEFENDANT SIMONLACAJ: Doctor, Your Honor, cardiologist.

THE COURT: You are currently under the care of a cardiologist?

DEFENDANT SIMONLACAJ: Yes, ma'am.

THE COURT: And have you had any surgery related to your heart?

DEFENDANT SIMONLACAJ: No.

THE COURT: I'm sorry. I couldn't hear you.

DEFENDANT SIMONLACAJ: No.

THE COURT: Are you taking any prescribed medications for your heart?

DEFENDANT SIMONLACAJ: Just aspirin daily.

THE COURT: And other than the aspirin -- you took the aspirin within the last 24 hours?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: Other than the aspirin, within the last 24 hours, have you taken any drugs, narcotics, medicine or pills or drunk any alcoholic beverages?

DEFENDANT SIMONLACAJ: No, Your Honor.

THE COURT: Have you ever been hospitalized or treated for substance abuse or for any mental or emotional problem?

DEFENDANT SIMONLACAJ: No.

THE COURT: Is your mind clear now?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: Do you understand what's going on here now?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: Addressing the three defense attorneys now, have you discussed the matter of pleading guilty with your client?

Mr. Miedel?

MR. MIEDEL: Yes, I have. Yes, I have.

THE COURT: Why don't I continue and with Mr. Miedel and then I'll do the other two.

Mr. Miedel, in your view, does Mr. Campos understand the rights he will be waiving by pleading guilty?

MR. MIEDEL: Yes, he does.

THE COURT: Is he capable of understanding the nature of these proceedings?

MR. MIEDEL: Yes, he is.

THE COURT: Do you have any doubt as to his competence to plead at this time?

MR. MIEDEL: I do not.

THE COURT: Have you advised him of the maximum sentence and fine that can be imposed and have you discussed with him the effect of the sentencing guidelines?

MR. MIEDEL: Yes.

THE COURT: Mr. Monteleon, have you discussed the

matter of pleading guilty with Mr. Dizenzo?

DEFENDANT DIZENZO: Yes, Your Honor.

THE COURT: In your view, does it seem he understands the rights he will be waiving by pleading guilty?

MR. MONTELEON: Yes, Your Honor.

THE COURT: Is he capable of understanding the nature of these proceedings?

MR. MONTELEON: Yes, Your Honor.

THE COURT: Do you have any doubt as to his competence to plead at this time?

MR. MONTELEON: No, I don't, Your Honor.

THE COURT: Have you advised him of the maximum fines that can be imposed and have you discussed with him the sentencing guidelines?

MR. MONTELEON: Yes, I have, Your Honor.

THE COURT: All right. If you could please mute your audio.

Mr. Colton, have you discussed the matter of pleading guilty with Mr. Simonlacaj?

MR. COLTON: Yes, Your Honor.

THE COURT: In your view, dose he understand the rights he will be waiving by pleading guilty?

MR. COLTON: Yes, Your Honor.

THE COURT: Is he capable of understanding the nature of these proceedings?

MR. COLTON: Yes, Your Honor.

THE COURT: Do you have any doubt as to his competence to plead at this time?

MR. COLTON: No, Your Honor.

THE COURT: Have you advised him of the maximum sentence and fine that can be imposed and have you discussed with him the effect of the sentencing guidelines?

MR. COLTON: Yes, Your Honor.

THE COURT: Turning back to the three defendants, and with respect to Mr. Dizenzo, please unmute your audio only when you specifically are answering my question.

Have you each had an opportunity to discuss your case with your attorney and are you satisfied to have him represent you?

Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: Have you each received a copy of the indictment that has been filed against you and have you consulted with your attorney about the indictment?

Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: I am now going to explain to each of you the count that I understand you are prepared to plead guilty to.

Mr. Campos, I understand that you are prepared to plead guilty to Count 10 of the indictment which charges you with making, with participating in a conspiracy to make false statements.

More specifically, that count, Count 10, charges, in substance, that between approximately January of 2018 and June of 2019, you and others knowingly and intentionally conspired or agreed to make false and fraudulent statements within the jurisdiction, within the DOL of the OSHA Outreach training program in that you agreed to state and represent that certain individuals had obtained, had attended certain OTP courses when, in fact, as you knew, the individuals had not attended those courses. It is further alleged that certain acts were taken to accomplish the goals of that conspiracy.

In order to prove you guilty of that offense, the government would have to prove the following beyond a reasonable doubt. First, that during that approximate time period, as alleged in Count Ten, you and others conspired or

agreed to commit a federal offense. The government would further have to prove that that offense was to make false statements.

Specifically, the government would have to prove that during the approximate dates charged in the indictment, you and others were to falsify a fact; second, that the fact that was to be falsified was a material one; third, that you and others did, were to do so by trick, scheme or device; fourth, that you acted knowingly and intentionally and not because of some mistake or innocent reason; fifth, that the falsification, concealment or coverup was with respect to a matter within the jurisdiction of the government of the United States, here, the United States Department of Labor, Occupational and Safety Health Act Outreach training program. In addition, the government would have to prove that you or one of your co-conspirators committed an overt act, that is, took a step to further the conspiracy that is alleged in Count Ten of the indictment.

Mr. Campos, do you understand that charge?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Mr. Dizenzo, I understand that you are prepared to plead guilty to Count 18 of the indictment. That count charges a wire fraud conspiracy relating to a construction company known as --

MR. MONTELEON: Judge, if I may, you broke up a

little bit. Can you just give us the count again?

THE COURT: Yes. Count 18, a wire fraud conspiracy involving Construction Company Number 2.

More specifically, Count 18 alleges that between approximately December of 2008 and June of 2019, you and others knowingly and intentionally conspired or agreed to devise a scheme and artifice to defraud Construction Company Number 2, including depriving the construction company of its right to honor services and also to obtain money and property from that company by means of materially false and fraudulent representations and that for the purpose of executing that scheme, the wire communications in interstate commerce were used, specifically interstate e-mails.

In order to prove you guilty of that offense, the government would have to prove the following beyond a reasonable doubt.

First, during the approximate time period alleged in Count 18, you conspired or agreed with others to violate the wire fraud statute and in order to prove that a legal objective, the government would have to establish the following beyond a reasonable doubt: That you and others agreed to participate in a scheme or artifice to defraud Construction Company Number 2 of property or its right to honor services of its employees by using false and fraudulent representations; second, that you acted knowingly and with

intent to defraud; third, that the misrepresentation or omission was material and, fourth, the government would have to prove the use of the wires in furthering that scheme including using interstate e-mails.

Do you understand Count 18 of the indictment?

DEFENDANT DIZENZO: Yes.

THE COURT: And Mr. Simonlacaj, I understand that you are prepared to plead guilty to Count 21 of the indictment which charges you with submitting a false tax return.

More specifically, it alleges that on approximately March 15th of 2019, you and others knowingly and willfully made and subscribed a false 1040 tax return for the tax year 2018 which was verified by a written declaration that it was made under the penalties of perjury and which was filed with the IRS and knowing that it was not true and correct as to one or more material matters in that the income tax return falsely reported a total income of almost $534,000, whereas, as you knew at the time, your total income was substantially greater than the reported amount.

In order to prove you guilty of that offense, the government would have to prove the following beyond a reasonable doubt.

First, that on or about the time alleged in the complaint, you subscribed, that is, signed and filed a U.S. 1040 tax return; second, that the return contained a written

declaration, that it was made under penalty of perjury; third, that you did not believe the return to be true and correct as to every material matter; and, fourth, that you acted knowingly and intentionally and not because of some mistake or innocent reason.

Do you understand that charge?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: And have you discussed that charge with your attorney?

DEFENDANT SIMONLACAJ: Yes, I have.

THE COURT: Addressing all three defendants and, again, Mr. Dizenzo, please unmute your audio only when you are responding to the questions. I want to explain to each of you the rights that you will be giving up by pleading guilty but the most important thing that you have to understand is that you do not have to plead guilty. You have an absolute right to plead not guilty even if you are guilty.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: If you plead not guilty, then under the constitution and laws of the United States, you are entitled

to a speedy and public trial by a jury with the assistance of counsel on the charges contained in the indictment against you.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

Mr. Dizenzo?

DEFENDANT DIZENZO: Yes. Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: You have the right to be represented by an attorney at every stage of the proceeding including trial and if you cannot afford counsel, you have the right to have the court appoint an attorney to represent you at no charge to you.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: At the trial, you would be presumed to be innocent and the government would have to overcome that presumption and prove you guilty by competent evidence and beyond a reasonable doubt. You would not have to prove that

you were innocent and if the government fails to prove you guilty beyond a reasonable doubt, the jury would have the duty to find you not guilty.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: In the course of the trial, the witnesses for the government would have to come to court and testify in your presence and your attorney would have the right to cross-examine the witnesses for the government and object to evidence offered by the government, to offer evidence on your behalf and to compel the attendance of witnesses.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: At a trial, while you would have the right to testify if you chose to do, you could you not be required to testify. Under the constitution of the United

States, you cannot be compelled to incriminate yourself. If you decided not to testify, the court would, at your lawyers' request, instruct the jurors that they could not hold that against you.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: If you plead guilty and the court accepts your plea, you will be giving up your constitutional rights to a trial and the other rights that I have just discussed. There will be no further trial of any kind and no right of appeal from the judgment of guilty. The court will simply enter a judgment of guilty on the basis of your guilty plea.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: If you plead guilty, I will have to ask you questions about what you did in order to satisfy myself

and Judge Block that you are, in fact, guilty of the charge to which you seek to plead guilty and you will have to answer my questions and admit your guilt. In that way, you will be giving up your right not to incriminate yourself.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Understanding what I have just said, are you still willing to give up your right to a trial and the other rights that I have just discussed?

Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Turning first to Mr. Campos, I have before me a plea agreement that will be marked Court Exhibit 1.

Turning to the last page of that document, have you reviewed your plea agreement with the government, have you read it in its entirety, discussed it with your attorney and

signed the document?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Does Court Exhibit 1 fully and accurately reflect your understanding of the agreement you have reached with the government concerning your guilty plea?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Other than the promises contained in this document, has anyone made any promise to you that has caused you to plead guilty?

DEFENDANT G. CAMPOS: No.

THE COURT: Has anyone made any promise to you as to what your sentence will be?

DEFENDANT G. CAMPOS: No.

THE COURT: Turning now to Mr. Dizenzo, I'm going to mark your plea agreement as Court Exhibit 2.

Have you read that document in its entirety and discussed it with your attorney and signed it?

DEFENDANT DIZENZO: Yes.

THE COURT: Does this document fully and accurately reflect your understanding of the agreement you have reached with the government concerning your guilty plea?

DEFENDANT DIZENZO: Yes.

THE COURT: Other than the promises contained in this document, has anyone made any promises that caused you to plead guilty?

DEFENDANT DIZENZO: No.

THE COURT: Has anyone made any promises as to when your sentence will be?

DEFENDANT DIZENZO: No.

THE COURT: Turning now to Mr. Simonlacaj, I am going to mark your plea agreement as Court Exhibit 3.

Have you read this entire document, discussed it with your attorney and signed it?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: Does this document fully and accurately reflect your understanding of the agreement you have reached with the government concerning your guilty plea?

DEFENDANT SIMONLACAJ: Yes.

THE COURT: Other than the promises contained in this document, has anyone made any promise that has caused you to plead guilty?

DEFENDANT SIMONLACAJ: No.

THE COURT: Has anyone made any promise to you as to what your sentence will be?

DEFENDANT SIMONLACAJ: No.

THE COURT: I now want to explain to each of you what the sentencing scheme is that is applicable to the count to which you are pleading guilty. I will start with Mr. Campos.

The statute that you are accused of violating in

Count 10 of the indictment carries a prison term of up to five years. Do you understand that?

DEFENDANT G. CAMPOS: Yes.

THE COURT: In addition to a prison term, the sentencing court can also impose a supervised release term of up to three years. The supervised release term will follow any term of imprisonment and if you violate a condition of supervised release, you could then be sent back to prison for up to an additional two years. If that happens, you would not receive credit for time already spent in prison nor will you receive credit for time previously served on post-release supervision. Do you understand that?

DEFENDANT CAMPOS: Yes.

THE COURT: In addition, the sentencing court can also impose a fine of up to $250,000. Do you understand that?

DEFENDANT G. CAMPOS: I didn't hear that.

THE COURT: I said that the court can also impose a fine of up to $250,000. Do you understand that?

DEFENDANT G. CAMPOS: Yes.

THE COURT: The sentencing court will impose a mandatory $100 special assessment. Do you understand that?

DEFENDANT G. CAMPOS: Yes.

THE COURT: I'm now going to address Mr. Dizenzo. Please leave your phone muted until I ask you to speak.

The offense to which you are seeking to plead

guilty, Count 18, carries a prison term of up to 20 years.

Do you understand that?

DEFENDANT DIZENZO: Yes.

THE COURT: Please mute your phone again.

In addition to a prison term, the sentencing court can also impose a supervised release term of up to three years. Again, as I indicated to Mr. Campos, the supervised release term will follow any term of imprisonment. If you violate a condition of supervised release, you could then be sent back to prison for up to an additional two years. If that happens, you would not receive credit for time already spent in prison, nor would you receive credit for time spent on post-release supervision. Do you understand that?

DEFENDANT DIZENZO: Yes.

THE COURT: The sentencing court can also require that you pay restitution to the victim or victims of your offense. Do you understand that?

DEFENDANT DIZENZO: Yes.

THE COURT: And Mr. Edelman, I am going to ask you if you have calculated an estimate as to the full amount of the losses.

MR. EDELMAN: We have, Your Honor.

THE COURT: And what is that amount?

MR. EDELMAN: For which count?

THE COURT: Well, for the count to which he has

pleading guilty unless he has agreed to pay more restitution than that.

MR. EDELMAN: No. For Mr. Dizenzo, at this time, the government estimates that it's at least $40,000.

THE COURT: All right. Mr. Dizenzo, the government indicates that it estimates that the full amount of the victims' losses in connection with Count 18 to which you are pleading guilty is $40,000. It will be up to Judge Block to determine whether or not to impose restitution. Well, it says it is mandatory. It will be up to Judge Block to determine the amount if there is a dispute about the amount.

Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes, Your Honor.

MR. MONTELEON: If I may say one thing, Your Honor. We do dispute the amount. We've had discussions with Mr. Edelman but we do dispute that amount.

THE COURT: I would just note for the record that that was Mr. Monteleon speaking.

And Mr. Dizenzo, the sentencing court will also impose a mandatory $100 special assessment. Do you understand that?

DEFENDANT DIZENZO: Yes, Your Honor.

THE COURT: Mr. Simonlacaj, the offense to which you are seeking to plead guilty in Count 21 carries a maximum term of imprisonment of three years. Do you understand that?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: In addition to a prison term, the sentencing court can also impose a supervised release term of up to one year. The supervised release term will follow any term of imprisonment and if you violate a condition of supervised release, you could then be sent back to prison for up to one year. Again, if that happens, you would not receive credit for time already spent in prison nor would you receive credit for time previously served on post-release supervision.

Do you understand that?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: The sentencing court can also impose a fine of up to $100,000. Do you understand that?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: And Mr. Edelman, what is the government's estimate of the victims' losses, in this case, it would be the IRS, in connection with the offense in Count 21?

MR. EDELMAN: Your Honor, as to this count, we haven't come to a final determination. Mr. Colton has provided us with evidence which he believes shows that there's no longer any restitution owed so that is something we'll explore when we get to sentencing.

THE COURT: All right. Mr. Simonlacaj, there is mandatory restitution required in connection with a conviction on this count. Mr. Edelman has indicated that it is your

position and your lawyer's position that you no longer owe any amount to the IRS, but if there is a dispute about that matter, it will be up to Judge Block to resolve the dispute and to determine the amount of restitution owed.

Do you understand that?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: The court will impose a mandatory $100 special assessment in connection with your conviction. Do you understand that?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Another consequence of your conviction on a tax violation is the imposition of the cost of prosecution. Do you understand that?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: I now want to talk with all three of you about the sentencing guidelines.

Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. In determining the sentence, the court is obligated to calculate the applicable sentencing guideline range and to consider that range, possible departures under the guidelines and other sentencing factors including those specified by statute.

Have you talked with your lawyer about how the

guidelines might apply to your case?

Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Each of you should understand that Judge Block will not be able to determine the guideline sentence for your case until after the Probation Department has prepared a presentence report and you and your attorney have had an opportunity to read it and to challenge the facts reported by the Probation Officer.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: You should also understand that after it has been determined what guideline applies to a case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for by the guidelines depending on what is a reasonable sentence.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: All right. Addressing the guidelines calculation for Mr. Campos first, I'm going to ask the prosecutor and defense counsel, and we will do it for each defendant, what the guideline range for that particular defendant is likely to be, but I want all three of you to keep in mind that these estimates are simply estimates. They are not binding upon Judge Block even if both the prosecutor and your lawyer happen to be in agreement.

Turning first to Mr. Campos' plea agreement -- well, before I address Mr. Campos specifically, there is one provision that applies to all three of you that I want to bring to your attention and that is that the government's calculations as set forth in each of the plea agreements indicate that there will be a 2 level reduction for a global resolution of the entire case, but the 2 level reduction applies only if all the conditions set forth in paragraph 8 have been established. Among other things, it means that all 12 defendants who are named in the same indictment must plead guilty by the end of this week and I can assure you that I have 12 guilty pleas scheduled before me this week. So,

certainly, it's the court's expectation that will be done.

Turning back now to Mr. Campos' plea agreement, the government has calculated an adjusted offense level of 4. Taking into account the global resolution and with another 2 level reduction for acceptance of responsibility, that would result in a range of imprisonment of zero to 6 months assuming that Mr. Campos falls within Criminal History Category I.

Correct?

MR. EDELMAN: That's correct, Your Honor.

THE COURT: And Mr. Miedel, you stipulated to that guideline stipulation, correct?

MR. MIEDEL: That is correct.

THE COURT: And Mr. Campos, you understand those calculations?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Turning now to Mr. Dizenzo's agreement, according to paragraph 2 of Court Exhibit 2, the government has calculated an adjusted offense level of 11 taking into account a 2 point reduction for acceptance of responsibility. With a further 2 level reduction for acceptance of responsibility, that would result in an adjusted offense level of 9 and a range of imprisonment of 4 to 10 months assuming that Mr. Dizenzo falls within Criminal History Category I.

Is that accurate, Mr. Edelman?

MR. EDELMAN: That's correct, Your Honor.

THE COURT: And Mr. Monteleon, have you done your own calculations under the guidelines?

MR. MONTELEON: Judge, I have had conversations with Mr. Edelman. We're in agreement regarding the base level, the global resolution acceptance reduction, however, we disagree as to the amount of loss. We believe it's less than 40,000 and if we were one level below, it would only be an increase of 4 points.

THE COURT: And so if you are correct, with an adjusted offense level of 7, what would the range of imprisonment be?

MR. MONTELEON: I believe it would be, Your Honor, zero to 6 months. We fall in Category I, we believe.

THE COURT: All right. And Mr. Dizenzo, do you understand the calculations of the government and your attorney?

DEFENDANT DIZENZO: Yes, Your Honor.

THE COURT: And you understand that it would be up to Judge Block to resolve any dispute regarding the amount of loss and, therefore, the resulting calculation under the guidelines? Do you understand that?

DEFENDANT DIZENZO: Yes.

THE COURT: And, lastly, Mr. Simonlacaj, as to you, the government has calculated an adjusted offense level of 10, again, taking into account the 2 level reduction for global

resolution with a further 2 level reduction for acceptance of responsibility. That would result in an adjusted offense level of 8 and a range of imprisonment of 4 to 10 months assuming that Mr. Simonlacaj falls within Criminal History Category II.

Mr. Edelman, is that your calculation as to Mr. Simonlacaj?

MR. EDELMAN: Yes, Your Honor.

THE COURT: And Mr. Colton, have you done your own calculation under the guidelines?

MR. COLTON: We have, Your Honor, and it's going to be our position that it is at least 4 levels lower which would yield a sentencing guideline range of zero to 6 months.

THE COURT: And what is the basis for your dispute?

MR. COLTON: The base level under this particular statute is driven by the alleged loss amount under 2T4.1 and it is our position that the amount of tax that arguably should have been due in 2018 as opposed to 2019, which there is no allegation of falsity for '19, is lower than the government's estimate as to what should have been reported in '18.

THE COURT: All right. Mr. Simonlacaj, you heard what the attorneys said. Do you understand their calculations?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: And do you understand that the dispute

regarding how to calculate the guidelines and the loss is a matter that will be resolved by Judge Block?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: I'm not sure whether that music is someone's phone. Thank you.

I want to bring to the attention of the three defendants a particular provision that appears in each of the three agreements and that is paragraph 4. That paragraph provides that the defendant agrees not to file an appeal or otherwise challenge his conviction or sentence in the event that the court imposes a term of imprisonment of a certain number of months or below.

In the case of Mr. Campos, that's in the event the court imposes a term of imprisonment of six months or below. In the case of Defendants Dizenzo and Simonlacaj, that provision provides in the event the court imposes a term of imprisonment of 12 months or below.

The number inserted in each of those agreements -- well, let me just say this. Under this agreement, you and your lawyers are free to argue before your sentence that you should not go to prison for as long as six months. For example, I know that there are some disputes about the guidelines calculations. Those can be litigated before Judge Block. You can take the position that the government, at least in the case of Mr. Dizenzo and Mr. Simonlacaj, that

the government has overstated the adjusted offense level. You can make the argument before Judge Block that in any event, you should be sentenced below the applicable guidelines range or if he is inclined to sentence you within the guideline range, to sentence you at the low end of the range rather than the upper end of the range.

All of these arguments and other good faith arguments are available to you and your lawyer before Judge Block sentences you. However, because of the language set forth in paragraph four of your plea agreement, once he sentences you, as long as the sentence does not exceed the amount specified in paragraph four, that is the end of the matter. Even if you have lost all your arguments for leniency, even if he rejects any arguments about the overstatement of the guidelines' adjusted offense level, as long as he does not sentence you to prison for more than what is specified in your agreement, that is the end of the matter. You have agreed that you will not file an appeal or otherwise challenge your conviction or sentence in the event that the court imposes a term of imprisonment of the number of months specified or below.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: You should also understand that parole has been abolished and that if you're sentenced to prison, you will not be released on parole.

Do you understand that, Mr. Campos?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Do you understand that, Mr. Dizenzo?

DEFENDANT DIZENZO: Yes.

THE COURT: Do you understand that, Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Do any of you have any questions you would like to ask me about the charge, your rights or anything else relating to this matter?

Mr. Campos?

DEFENDANT G. CAMPOS: No.

THE COURT: Mr. Dizenzo?

DEFENDANT DIZENZO: No.

THE COURT: Mr. Simonlacaj?

DEFENDANT SIMONLACAJ: No, Your Honor.

THE COURT: Starting with Mr. Campos, are you ready to plead?

DEFENDANT CAMPOS: Yes, I am.

THE COURT: Mr. Miedel, do you know any reason why your client should not plead guilty?

MR. MIEDEL: No, Your Honor.

THE COURT: Are you aware of any viable legal defense to the charge?

MR. MIEDEL: No, Your Honor.

THE COURT: Mr. Campos, what is your plea to Count 10 of the indictment, guilty or not guilty?

DEFENDANT G. CAMPOS: Guilty.

THE COURT: Are you making this plea of guilty voluntarily and of your own free will?

DEFENDANT G. CAMPOS: My own free will.

THE COURT: Has anyone threatened or forced you to plead guilty?

DEFENDANT G. CAMPOS: No.

THE COURT: Other than the agreement with the government that has been marked Court Exhibit 1, has anyone made any promise to you that has caused you to plead guilty?

DEFENDANT G. CAMPOS: No.

THE COURT: Has anyone made any promise to you as to what your sentence will be?

DEFENDANT G. CAMPOS: No.

THE COURT: Again, Count 10 charges you with conspiring or agreeing to make a false statement in connection with the DOL administration of the OSHA Outreach training program between January of 2018 and June of 2019.

Did you, in fact, do that?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Would you tell me in your own words what you did that makes you guilty of the offense charged in Count 10?

DEFENDANT G. CAMPOS: Between 2018 and 2019, I agreed with others that false statements would be submitted to the Department of Labor. Specifically, I agreed with others that I would be, represent, represented to the Department of Labor that I attended OSHA certification course when, in fact, I did not. I understand that this was wrong and against the law.

MR. MIEDEL: And, Your Honor, this is Florian Miedel. I would just add that we do not dispute that the government says this happened in the Eastern District of New York.

THE COURT: All right. And you say that you agreed to do that and did that, in fact, occur? Were those false statements made?

DEFENDANT G. CAMPOS: Yes.

THE COURT: Mr. Edelman, is there any further inquiry you would like me to make of Mr. Campos?

MR. EDELMAN: I don't believe any further inquiry is required, Your Honor. I would just note that we would establish at trial that those false statements were material to the Department of Labor's enforcement of the Outreach

training.

THE COURT: All right. Before I go on to Mr. Dizenzo, I think what I will do is I will wrap up with Mr. Campos so that if he and Mr. Miedel want to sign off, they can.

Well, actually, before I do that, Mr. Edelman, has an oral order and written order been entered under revised Rule 5(f) in this case?

MR. EDELMAN: There has not, Your Honor, because as Your Honor knows, Rule 5(f) came out after the case proceeded and we haven't actually been in court since that time but to the extent Your Honor or Judge Block wishes, obviously, that's appropriate and we'll confirm our knowledge of our Brady obligations.

THE COURT: Well, I do think it is appropriate since Brady applies not only to guilt but also to punishment so I think what I'll do is I'll keep Mr. Campos and Mr. Miedel on the line. I will go through the allocutions of the other two defendants and at the conclusion, I will state on the record an oral Rule 5(f) order.

Mr. Dizenzo, are you ready to plead?

DEFENDANT DIZENZO: Yes.

THE COURT: And Mr. Monteleon, is there any reason why your client should not plead guilty?

MR. MONTELEON: No, Your Honor.

THE COURT: Are you aware of any viable legal defense to the charge?

MR. MONTELEON: No, Your Honor.

THE COURT: Mr. Dizenzo, what is your plea to Count 18 of the indictment, the wire fraud conspiracy charge relating to Construction Company Number 2, guilty or not guilty?

DEFENDANT DIZENZO: Guilty.

THE COURT: Are you making this plea of guilty voluntarily and of your own free will?

DEFENDANT DIZENZO: My own free will.

THE COURT: Has anyone threatened or forced you to plead guilty?

DEFENDANT DIZENZO: No.

THE COURT: Other than the agreement with the government, has anyone made any promises that caused you to plead guilty?

DEFENDANT DIZENZO: No.

THE COURT: Has anyone made any promise to you as to what your sentence will be?

DEFENDANT DIZENZO: No.

THE COURT: And I'm going to ask you to mute your audio for a minute.

Count 18 alleges that between approximately December of 2018 and June of 2019, you and others conspired to engage

in a scheme and artifice to defraud Construction Company Number 2 of its right to honor services and of money and property by means of materially false representations and that interstate e-mails were sent in connection with that scheme.

Did you, in fact, do that?

DEFENDANT DIZENZO: Yes.

THE COURT: Would you tell me in your own words what you did that makes you guilty of Count 18?

DEFENDANT DIZENZO: Between December 2018 and June 2019, within the Eastern District of New York, through the use of e-mails, I agreed with others to defraud Construction Company Number 2 by providing materials for construction at White Plains Gym for the benefit of an employee of Construction Company Number 2. I billed an unrelated project of Construction Number 2.

THE COURT: In other words, you provided materials personally for use of that employee, but as part of the scheme, his employer was charged for those materials?

DEFENDANT DIZENZO: Yes.

THE COURT: And you knew that was wrong to do?

DEFENDANT DIZENZO: Yes.

THE COURT: Mr. Edelman, is there any further inquiry --

(Videoconference interruption.)

THE COURT: I'm going to ask Mr. Monteleon to mute

the audio, please.

All right. I was addressing this question to Mr. Edelman.

Is there any further inquiry you would like the court to make of Mr. Dizenzo?

MR. EDELMAN: Thank you, Your Honor. I don't believe any further inquiry is required, but I note we would prove that the e-mails that were used in connection with the scheme were interstate e-mails given the location of the e-mail server at issue and although Mr. Dizenzo mentioned this, we would, in fact, prove that an act taken in furtherance of the conspiracy occurred in the Eastern District of New York.

THE COURT: All right. And turning now to Mr. Simonlacaj, I will note at the outset that this count alleges that the acts occurred in the Southern District of New York so I take it there is going to be a waiver of venue?

MR. COLTON: This is Glenn Colton, attorney for Mr. Simonlacaj. We are waiving venue as part of this plea proceeding.

THE COURT: All right. Mr. Simonlacaj, are you ready to plead?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Mr. Colton, do you know any reason why your client should not plead guilty?

MR. COLTON: No, Your Honor.

THE COURT: Are you aware of any viable legal defense to the charge?

MR. COLTON: No, Your Honor.

THE COURT: Mr. Simonlacaj, Count 21 charges you that on approximately March 15th of 2019, you and others knowingly and willfully made and subscribed a false and fraudulent 1040 for the tax year 2018 that was made under the penalties of perjury and filed with the IRS in which you falsely reported a total income of $534,915 when, as you knew, your total income was substantially greater than that amount.

Did you, in fact, commit those acts?

DEFENDANT SIMONLACAJ: Yes, Your Honor.

THE COURT: Would you tell me in your own words what you did that makes you guilty of the offense charged in Count 21?

DEFENDANT SIMONLACAJ: I caused to be made a federal income tax return for 2018 that was filed on or about March 15th of 2019 and that contained a written declaration that it was made under the penalties of perjury. That tax return did not include as income the value of certain progress on my residence that was not paid for. At the time the return was filed, I resided in the Southern District of New York.

Beginning in or around the latter part of 2018, my family undertook improvements to our residence which was to be

done by various contractors, one or more of which I understood would not be paid in full for their services. A substantial majority of the work on the house was done in 2019, however, a limited portion of the work was performed or begun in 2018.

A portion of the work performed or that began in 2018 was provided by a contractor that I understood was providing some of their service for free. While I was aware of the high probability that some of the value of work performed in 2018 by a contractor not expecting to be paid should be considered income in 2018 rather than in 2019 for federal tax purposes and should have been reported on the 2018 return rather than the 2019 return. I consciously avoided learning that.

Despite the fact that the work performed in '18 by a contractor was not being paid in full was a small percentage of the home improvements. I know that I should have paid more attention to what was reportable income for which year rather than consciously avoiding some income and a small percentage should have been reported earlier that year. Despite the fact that I paid all taxes due to the home improvements in connection with the filing of 2019 tax return, I wish I had paid more attention to the timing.

I also apologize to the court for my actions.

THE COURT: Mr. Edelman, do you have any further inquiry that you would like the court to make of

Mr. Simonlacaj?

MR. EDELMAN: No, Your Honor.

THE COURT: All right. Based upon the information provided to me by each of the three defendants, I find that each defendant is acting voluntarily, that he fully understands his rights and the consequences of his plea and that there is a factual basis for each of the three pleas. I therefore recommend that Judge Block accept each of the three pleas of guilty.

Do would have a date for sentencing before Judge Block?

THE CLERK: No, Judge. It will be set by Probation.

THE COURT: All right. Each of the three defendants should understand that the Probation Department will be preparing a presentence report and I urge you to cooperate with your Probation Officer.

Lastly, as I indicated earlier, I do want to put on the record an oral order arising under recently revised Rule 5(f).

As I indicated, since Brady applied to punishment as well as guilt, I direct the prosecution to comply with its obligation, under Brady versus Maryland and its progeny, to disclose to the defense all information whether admissible or not that is favorable to the defendant, that is material either to guilt or to punishment and known to the prosecution.

Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence and professional discipline or court sanctions on the attorneys responsible.

I will be entering a written order more fully describing this obligation and the possible consequences of failing to meet it and I direct the prosecution to review and comply with that order.

Mr. Edelman, do you confirm that you understand the government's obligations, that you have fulfilled them and you will continue to do so?

MR. EDELMAN: Yes, Your Honor.

THE COURT: All right. Is there anything further that we need to address?

MR. EDELMAN: Not from the government, Your Honor.

THE COURT: Anything from defendants?

MR. MONTELEON: No, Your Honor.

MR. MIEDEL: No, Your Honor.

MR. COLTON: No, Your Honor.

THE COURT: All right. I am going to terminate this proceeding and I hope everyone stays safe and healthy and I apologize for the technical issues at the outset. Goodbye.

MR. EDELMAN: Thank you, Your Honor.

MR. EDELMAN: Thank you, Your Honor.

(Matter concluded.)